## SANCHEZ v. UNITED STATES.
### No. 3766.

Circuit Court of Appeals, First Circuit.
March 11, 1943.

Writ of Certiorari Denied June 7, 1943.

See —— U.S. ——, 63 S.Ct. 1325, 87 L.Ed. ——.

---

Pedro E. Sanchez Tapia, pro se.

Adolfo Valdes and Francisco Ponsa Feliú, Asst. U. S. Attys., Philip F. Herrick, U. S. Atty., all of San Juan, Puerto Rico, for appellees.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for Puerto Rico sentencing the defendant to a term of imprisonment, and probation thereafter, after a jury had found him guilty on all three counts of an indictment. In the first count the defendant and his wife were charged with unlawfully, knowingly and willfully soliciting an excessive fee from a veteran of the World War in violation of 38 U.S.C.A. § 551.[1] In the sec—

---

[1] "Except in the event of legal proceedings under section 445 of this title, no claim agent or attorney except the recognized representatives of the American Red Cross, the American Legion, the Disabled American Veterans, and Veterans of Foreign Wars, and such other organizations as shall be approved by the Administrator of Veterans' Affairs shall be recognized in the presentation or adjudication of claims under Subchapters II, III, and IV of this chapters II, III, and IV of this chapter, and payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the Veterans' Administration shall not exceed $10 in any one case: Provided, however, That wherever a judgment or decree shall be rendered in an action brought pursuant to said section 445 of this title the court, as a part of its judgment or decree, shall determine and allow reasonable

ond count they were charged, in substantially the same language, with receiving an excessive fee in violation of the same statute. In the third count they were charged with unlawfully, knowingly and willfully procuring the making of a false and fraudulent affidavit "pertaining to a matter within the jurisdiction of the Administration of Veterans' Affairs of the United States", in violation of 18 U.S.C.A. § 81.[2] The jury found the defendant's wife not guilty on all counts, the finding of not guilty on the third count being by direction of the court.

There is evidence that in 1936 the defendant approached one Lorenzo Rivera, a World War veteran, and said to him "I will make a claim for your insurance, and you give me half of what I get"; that thereafter a claim under Rivera's policy of United States government life insurance was presented to the Administrator of Veterans' Affairs, but was denied; and that eventually an action on this policy was brought against the United States in the District Court of the United States for the District of Columbia. In this action Rivera, who was represented by local counsel, obtained a judgment for $3,000, the face amount of his policy. This judgment was paid, and in February, 1939 the amount thereof, less 10% allowed by the court for counsel's fee, was remitted by check to Rivera in

Puerto Rico. When his check arrived Rivera, who was illiterate and in ill health, endorsed it over to his brother-in-law, an accountant, with instructions to use the proceeds thereof to pay his (Rivera's) debts.

Among the claims against Rivera presented to the brother-in-law for payment was one made by the defendant's wife for services which she alleged her husband had rendered with respect to Rivera's claim under his insurance policy. Originally she asked for $700, but the brother-in-law balked at paying so much, and eventually, with Rivera's consent, he gave her $200 in cash. Thereafter the defendant's wife twice visited Rivera personally when he was confined in a hospital. On the first of these visits she demanded, on behalf of her husband, one-half of the amount recovered on the policy "for the work he had done in making that claim", as Rivera expressed it, and on the second visit Rivera said he gave her $20. In his testimony Rivera summarized the events which took place at these visits as follows: "She said, 'I went to get half of the money over there', and they gave me $200' and I told her I was going to send for some more money. Then they sent me a telegram, a telegraphic money order, and I cashed it at a small restaurant that was there, and she called me

fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the Veterans' Administration out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid. Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, or who shall attempt to solicit, contract for, charge, or receive, any fee or compensation, except as herein provided, shall be guilty of a misdemeanor, and for each and every offense shall be punishable by a fine of not more than $500 or by imprisonment at hard labor for not more than two years, or by both such fine and imprisonment."

2 "Every person who knowingly or willfully makes or aids, or assists in the making, or in any wise procures the making or presentation of any false or fraudulent affidavit, declaration, certificate, voucher, or paper or writing purporting to be such, concerning any claim for pension or payment thereof, or pertaining to any other matter within the jurisdiction of the Administration of Veterans' Affairs or of the Secretary of the Interior, or who knowingly or willfully makes or causes to be made, or aids or assists in the making, or presents or causes to be presented any paper required as a voucher in drawing a pension, which paper bears a date subsequent to that upon which it was actually signed or acknowledged by the pensioner, and every person before whom any declaration, affidavit, voucher, or other paper or writing to be used in aid of the prosecution of any claim for pension or bounty land or payment thereof purports to have been executed who shall knowingly certify that the declarant, affiant, or witness named in such declaration, affidavit, voucher, or other paper or writing personally appeared before him and was sworn thereto, or acknowledged the execution thereof, when in fact such declarant, affiant, or witness did not personally appear before him or was not sworn thereto, or did not acknowledge the execution thereof, shall be punished by a fine not exceeding five hundred dollars or by imprisonment for a term of not more than five years."

out on the balcony of the hospital, and I gave her the $20."

The evidence as to the third count is that in 1940 the defendant, accompanied by a Notary, called at Rivera's house and induced Rivera to execute a certain affidavit which the defendant had prepared and which, after execution, the defendant carried away and subsequently destroyed. The registry of affidavits kept by the Notary before whom this affidavit was executed, which was introduced into evidence as an exhibit, shows that this affidavit was to the effect that the affiant "did not pay any money to any one" other than to his attorney in Washington, "for services rendered to him in a case for collection of federal insurance in his veteran's case."

The defendant contends that in order to show a violation of the statute under which the first two counts of the indictment were laid the government must allege and prove that he actually prepared and executed some paper necessary to Rivera's application to the Veterans' Administration and he says that there is no such evidence in the record. We do not agree with either of these propositions.

It seems to us that the only reasonable inference to be drawn from the testimony is that the defendant did in fact render some required assistance to Rivera in the preparation and execution of papers necessary to his application to the Veterans' Administration. But the court below charged the jury, in spite of a request to charge to the contrary, that "it doesn't make any difference whether papers were actually prepared or not, if the fee was solicited for the preparation." Although this statement was pretty obviously meant to apply only to the case against the wife, still, since the defendant argues that he was prejudiced by it, we shall dispose of his contention on the legal rather than on the factual ground.

The statute provides that "payment to any attorney or agent for such assistance as may be required in the preparation and execution of the necessary papers in any application to the Veterans' Administration shall not exceed $10 in any one case"; and that "Any person who shall, directly or indirectly, solicit, contract for, charge, or receive, * * * any fee or compensation, except as herein provided, shall be guilty of a misdemeanor."

■■ The obvious purpose of Congress in passing this statute was to protect World War veterans from being charged excessive fees for aid in prosecuting applications to the Veterans' Administration for benefits under the various statutes passed for their relief and assistance. We find nothing in the statute itself or in its context to indicate any broader Congressional purpose or intent, that is to say, any intent to limit the fees chargeable to World War veterans for aid in any matter except the preparation of papers relating to applications of the above nature. Thus the obvious function of the clause under consideration is to limit the statute's application to matters of the sort which Congress had in mind, that is to say, to differentiate and distinguish fees charged for the preparation and execution of papers in applications to the Veterans' Administration from fees charged for matters of any other sort. It follows that the actual preparation of any papers relating to an application to the Veterans' Administration is not an element of the crime defined. It is enough to support a conviction under this statute for the government to show that an excessive fee was solicited, contracted for, charged or received for assistance, whether or not such assistance was ever in fact rendered, "in the preparation and execution of the necessary papers in any application to the Veterans' Administration."

Our conclusion is confirmed by the absurdity which would result if we adopted the construction of the statute contended for by the defendant. If his construction is correct then one who solicited, contracted for, charged or received an excessive fee for assistance of the kind specified would be guilty of a crime only if he in some measure earned his fee, while one who also solicited, contracted for, charged or received an excessive fee for similar assistance, but who in fraud of his client or principal did nothing whatever to earn it, would be guiltless. We cannot suppose that Congress intended any such extraordinary result.

■ The defendant's principal contention with respect to the third count is that the statute under which that count was laid (18 U.S.C.A. § 81) has reference only to procuring the making of false affidavits for use in pension claims, and that the false affidavit which he was charged with having procured related to a claim under a policy of United States Government life

**283**

insurance, a wholly different matter. The government in its brief practically concedes that this is so, and we agree. United States v. Keitel, 211 U.S. 370, 395–399, 29 S.Ct. 123, 53 L.Ed. 230. But the government argues that the defendant's conviction and sentence under this count can be and should be sustained since the acts therein set out constitute a criminal offense under 18 U.S. C.A. § 80.[3]

We must concede that the position taken by the government is sound. In Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 94, 42 L.Ed. 509, decided in 1897, the Supreme Court said: "It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force. The indorsement on the margin of the indictment constitutes no part of the indictment, and does not add to or weaken the legal force of its averments. We must look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute." This rule was applied in Capone v. United States, 7 Cir., 51 F.2d 609, 616, 76 A.L.R. 1534, certiorari denied 284 U.S. 669, 52 S.Ct. 44, 76 L.Ed. 566, and was referred to with approval by the Supreme Court in United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788. In view of these cases it is not open to us to question the validity of the rule and since we cannot question its applicability to the situation presented in the case at bar, we must consider whether or not an offense under any statute is alleged in this count of the indictment.

■ Section 80 of Title 18 U.S.C.A. makes it a criminal offense punishable by a

fine or imprisonment, or both, for anyone to "knowingly and willfully * * * cause to be made—any false * * * affidavit, * * * knowing the same to contain any * * * fictitious statement * * * in any matter within the jurisdiction of any department or agency of the United States." The third count of the indictment charges the defendant with knowingly and willfully procuring the making by Rivera of a false affidavit pertaining to a matter within the jurisdiction of the Administration of Veterans' Affairs and there is ample evidence in the record to support these averments. This being so, and since there can be no doubt that the Veterans' Administration is an agency of the United States, the only question presented is whether or not the affidavit related to a matter within the jurisdiction of that agency. We have no doubt that it did.

Under section 426 of Title 38 U.S.C.A. the Administrator of Veterans' Affairs is empowered, subject to the general direction of the President, to administer, execute and enforce the provisions of the chapter relating to World War Veterans' Relief (Chapter 10) which includes section 551, the section relating to excessive fees. Since the affidavit obtained by the defendant from Rivera related to this subject, it related to a "matter within the jurisdiction of the Veterans' Administration" as the word "jurisdiction", as used in § 80, has been defined by the Supreme Court. United States v. Gilliland, 312 U.S. 86, 92, 93, 61 S.Ct. 518, 85 L.Ed. 598.

During the course of the trial below the defendant took several exceptions to the admission and exclusion of evidence but only two of them have sufficient merit to warrant discussion.

■ He moved that all of the testimony of Rivera, who was the government's prin-

[3] "Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

cipal witness, be stricken out. This motion was based primarily on the ground that Rivera testified categorically 'that his payments to the defendant's wife were made at some time, he could not remember the month, in 1938, while all the other evidence in the case, including necessary inferences from the other testimony of Rivera himself, leads inescapably to the conclusion that those payments were made at or about the date alleged in the first two counts of the indictment, that is, in March, 1939. This motion was properly denied. We are aware of no rule requiring that all of the testimony of a witness should be stricken out because it appears that beyond doubt he was mistaken in respect to some one particular matter.

The only other ruling on evidence which we will consider is the ruling admitting into evidence the Notary's record of the contents of the affidavit which it is alleged the defendant caused Rivera to execute. The defendant argues that this record should have been excluded because the only admissible evidence of the contents of Rivera's affidavit is the affidavit itself. Since the Notary's record was kept by him in the regular course of his business and since it was also the best evidence in existence of the contents of the affidavit, the defendant having himself, according to his own testimony, destroyed the original document, the record was clearly admissible.

The defendant also contends that it was error for the court below, and also for this court to which he made application, to have refused to admit him to bail pending this appeal.

There is no constitutional right to bail pending appeal. See United States v. Motlow, 7 Cir., 10 F.2d 657, in which the question is fully considered. Whether or not bail should be granted pending appeal in any particular case rests in the sound discretion of the courts or judges authorized to admit to bail under Rule 6 of Rules of Criminal Procedure After Plea of Guilty, Verdict or Finding of Guilt, promulgated May 7, 1934. 18 U.S.C.A. following section 688. In disposing of the defendant's contention it suffices to say that we find nothing in the record to indicate any abuse of discretion in refusing to admit the defendant to bail pending appeal under the provisions of the above rule.

The defendant's other objections and exceptions, and there are a great many of them, have all been carefully considered but we find them so lacking in merit as not to warrant discussion.

The judgment of the District Court is affirmed.

MAGRUDER, Circuit Judge, heard the argument but through absence was unable to participate in the decision of this case.