## TODOROW et al. v. UNITED STATES.
### No. 11629.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1949.

Rehearing Denied March 18, 1949.

Writ of Certiorari Denied June 6, 1949.

See 69 S.Ct. 1169.

Morris Lavine, of Los Angeles, Cal., for appellants.

442

James M. Carter, U. S. Atty., Ernest A. Tolin, Chief Asst. U. S. Atty., and Paul Fitting, Asst. U. S. Atty., all of Los Angeles, Cal., for appellee.

Before MATHEWS and STEPHENS, Circuit Judges, and DRIVER, District Judge.

DRIVER, District Judge.

In each of the four counts of the indictment, the appellants were accused of violation of the false claims act, 18 U.S.C.A. § 80.[1] The jury acquitted them on the first three counts. They have appealed from their conviction on Count IV.

Count IV charged that on July 11, 1946, appellants knowingly and willfully caused Byron N. Taylor, a veteran of World War II, to make false and fraudulent statements and representations in connection with his purchase of certain trucks as surplus property of the United States, a matter within the jurisdiction of the War Assets Administration; that the statements appeared in a "Veteran's Application for Surplus Property" and a "Purchase-Requisition Form," filled out by Taylor; and that he therein falsely represented that he would immediately start an oil transporting business as an individual proprietor and was purchasing the vehicles for his own personal use, or for the maintenance of his business, and not for the purpose of resale.

The pertinent part of the false claims act reads as follows: "* * * whoever shall knowingly and willfully * * * make or cause to be made any false or fraudulent statements or representations * * * in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined * * * or imprisoned * * * * or both."

■ First of all, appellants contend that the evidence is not sufficient to support the verdict. The contention calls for an examination of the basic facts as the jury could have found them from the evidence if every conflict in the testimony had been resolved in favor of the appellee.

From May until August of 1946, the War Assets Administration conducted a sale of surplus trucks at Port Hueneme, California. No purchaser could buy more than twenty-five units. At the outset, veterans had exclusive priority, but the rules were changed from time to time as the sale progressed to permit other groups to participate. On July 11, veterans, government, state, and municipal agencies, and licensed automobile dealers were eligible to purchase to the exclusion of the general public, but on a first-come-first-served basis, without priority as to each other.

Appellant Todorow, an exporter of trucks and tires of New York City, and appellant Potolski, an automobile dealer of Albany, New York, came to California together to buy trucks at the sale. On June 26, they were certified as veterans at Port Hueneme and, together, purchased fifty dump trucks, the full limit of their allowances. They knew that their quotas had been exhausted.

About two weeks later, at a hotel in Los Angeles, where appellants were staying, appellant Todorow approached Byron N. Taylor, an elevator operator, and asked him if he was a veteran. Upon receiving an affirmative reply, Todorow offered to pay Taylor twenty dollars if the latter would go, the next day, to the surplus property sale and buy some trucks for Todorow. The next day, Taylor, together with another veteran by the name of Lauridsen, who was a parking attendant at the same hotel, went with appellants to Port Hueneme in a car driven by Potolski. On the way, Lauridsen asked about the legality of the arrangement and Potolski said that appellants were in the used car business, had bought their limit of trucks and were using other veterans' priorities. Appellants instructed Taylor and Lauridsen to buy refueler trucks.

Upon their arrival at Port Hueneme, all four of the party entered the certification building, where Taylor and Lauridsen were certified as veterans, and each made out an application for six refueler trucks. In his application, Taylor stated that he planned to start operations as soon as possible in

[1] The portion of the statute involved in the present case is now Sec. 1001 of the new Title 18 U.S.C.A., effective September 1, 1948.

the business of transporting oil, as an individual proprietor, and certified that he was not procuring the trucks for the purpose of resale, but for use in that business. He also signed a purchase-requisition form, which recited that he was purchasing the trucks for his own personal and business use. At that time, Taylor had no intention of going into the oil transporting business.

As he was making out his application form, Taylor turned to appellant Todorow and asked what business he "ought to put down." Todorow replied that there was no question as to what business Taylor was "going in" and that "anything would be sufficient." After his completed application had been turned in, Taylor was given a purchase-requisition form. Todorow examined it, and, upon discovering that it authorized the purchase of only one truck, told Taylor to go back to "Building X" and have it changed to cover six trucks. Taylor went back as directed, but was not successful, and later on Todorow went with him to "Building X," where Todorow pursuaded a clerk to assign five additional trucks to Taylor. Contracts for the sale of six trucks, each, to Taylor and Lauridsen were made out and were then handed to appellant Todorow in "Building W," at Port Hueneme, in the presence of appellant Potolski. Eventually, after they had been questioned by representatives of the War Assets Administration, appellants destroyed the Taylor purchase contract and the transaction was never consummated.

On the return trip from Port Hueneme to Los Angeles, on July 11, appellant Potolski gave Taylor twenty dollars and handed him a prepared receipt, which Taylor signed and handed back to Potolski. It was worded to acknowledge receipt of twenty dollars from Potolski and Todorow. Appellant Todorow was driving the car at the time. Lauridsen was paid fifteen dollars, but refused to sign a receipt. When Lauridsen asked, "Why all the hush-hush up at Port Hueneme if everything was so legal?"—appellant Potolski answered, "We didn't want it to look like you were buying them for us."

It is apparent from the foregoing summary that there was substantial proof of at least two elements of the charge, namely, that Taylor made the representations, alleged in Count IV, and that the representations were false. As to whether appellants caused Taylor to make the false statements, they maintain there was a failure of proof, since they did not tell him how to fill out his application and did not know what statements it contained. It was not necessary, however, that they be directly responsible for the specific representations, which Taylor made, or that the wording of the representations be of their dictation. They were the instigators, the planners, and the prospective beneficiaries of the whole scheme, the success of which, necessarily, depended upon the making of false statements by Taylor. It may fairly be assumed that they were familiar with the procedure followed at the sale, the application forms used, and the requirements as to veterans, as they had previously purchased their full quotas as veterans. They knew that he was not a dealer and that his only claim to priority was as a veteran. When they induced him to make the application for the purchase of the trucks for their benefit and not for his own use, in legal effect, they caused Taylor to make the false representations, which he was obliged to make in order to qualify as an eligible war veteran purchaser at the surplus property sale.[2]

Appellants argue that the evidence should be regarded as insufficient because the convictions rest upon the unsupported testimony of Taylor and that in the present case, as in prosecutions for perjury, "there ought to be two witnesses." There is no sound reason for invoking the perjury rule here.[3] We are not called upon to sustain a finding that statements

[2] United States v. Goldsmith, 2 Cir., 108 F.2d 917, 921; United States v. Uram, 2 Cir., 148 F.2d 187, 190; McCoy v. United States, 9 Cir., 169 F.2d 776, 781.

[3] For discussion of the rule that, in a perjury case, the uncorroborated testimony of one witness is not sufficient to establish the falsity of the testimony of the accused on which the charge is based, see Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118; Weiler v. United States, 323 U.S. 606, 65

were false on the sole basis of "an oath against an oath." It was not disputed that Taylor made false representations in his application. There was a conflict in the testimony as to whether appellants caused the representations to be made, but in that regard, Taylor was corroborated by circumstances which tended to support his version of the transaction. The appellants transported him and Lauridsen from Los Angeles to Port Hueneme and back again in a hired automobile. While at Port Hueneme with the appellants, on July 11, Taylor applied for the purchase of six, surplus, tank, refueler trucks. Taylor's contract of purchase was turned over to appellants, and they paid him the sum of twenty dollars for his services. Even though it be assumed, however, that the verdict was based upon Taylor's testimony alone and that Taylor was an accomplice, the conviction should not be set aside on that account, since it lawfully may rest upon the uncorroborated testimony of an accomplice.[4]

Appellants, in effect, question whether the misrepresentations, made by Taylor, were in a matter within the jurisdiction of an agency of the United States, as they complain that there was no evidence of any "rule, regulation, or order" concerning which any false statements were made. The War Assets Administration was created by an executive order of January 31, 1946, to exercise functions relating to the disposal of domestic, surplus property. Executive Order 9689, 50 U.S.C.A. Appendix, § 1614a note, 1 CFR, 1946, Supp., p. 93. By the Act of May 3, 1946, 60 Stat. 168, 50 U.S.C.A. Appendix, § 1625, the Administration was recognized and empowered by Congress to prescribe regulations to aid veterans in the acquisition of surplus property. The Administration's regulation No. 2, effective May 3, 1946, 11 F. R. 5125 et seq., covered the disposal of surplus property to several classes of priority purchasers. It provided that certain types, including automotive vehicles, should be set aside for exclusive disposal to veterans for not less than fifteen days and for such longer period as the Administrator might direct, after public notice had been given of its availability for disposal; and that disposal agencies might establish maximum quantities, which could be acquired by any one veteran during a given period of time. 11 F.R. 5126, Sec. 8302.4. The regulation also specified that, with certain exceptions, not applicable here, disposals to priority claimants should be for their own use only and not for transfer or disposition by them to others, and that disposal agencies might require priority claimants so to certify. 11 F.R. 5127, Sec. 8302.9(b).

It thus appears that on July 11, 1946, the date of the transaction under consideration, the War Assets Administration was an agency of the United States, and that the false representations, made by Taylor in his application to purchase surplus trucks, pertained to matters within its jurisdiction.[5] Moreover, since Taylor, as a veteran, in common with several other priority classes, had a preferential right to purchase the trucks, but only on condition that he was buying them for his own use, the statements made in his application may not be disregarded as imma-

---

S.Ct. 548, 89 L.Ed. 495, 156 A.L.R. 496. As the opinion in the Weiler case points out, an important reason for the retention of the rule is the protection it affords to witnesses against unfounded prosecutions for perjury which might otherwise be instigated by vindictive, defeated litigants.

4 Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R. A.1917F. 502, Ann.Cas.1917B, 1168; Robertson v. United States, 6 Cir., 111 F.2d 1018; Westenrider v. United States, 9 Cir., 134 F.2d 772, 774; Kempe v. United States, 8 Cir., 151 F.2d 680, 686. In the present case, the Court instruct-

ed the jury that the testimony of an accomplice, if believed beyond a reasonable doubt, may support a verdict of guilty, even though not corroborated by other evidence, but that such testimony is to be received with caution and weighed with great care.

5 See Fuller v. United States, 9 Cir., 110 F.2d 815, certiorari denied, 311 U.S. 669, 61 S.Ct. 29, 85 L.Ed. 430; Sanchez v. United States, 1 Cir., 134 F.2d 279, certiorari denied, Sanchez Tapia v. United States, 319 U.S. 768, 63 S.Ct. 1325, 87 L.Ed. 1717; United States v. Barra, 2 Cir., 149 F.2d 489.

terial, as appellants contend.[6] See United States v. Kapp, 302 U.S. 214, 216–218, 58 S.Ct. 182, 82 L.Ed. 205.

Appellants also claim prejudicial error with reference to the instructions. In their reply brief, they particularly stress the point that the Trial Court did not instruct the jury as to the statutes and regulations creating the War Assets Administration and governing its sale of surplus property. They cite cases, which have applied the general rule that in a criminal case, the Court must instruct the jury on all applicable law involved, whether or not he is requested to do so. The rule does not go beyond the requirement that the Court instruct on the principles of law which the jury should have in order to decide the factual issues presented. In the present case, the appellants were not accused of the violation of any regulation. They were charged with the violation of a statute. Other statutes and executive orders and regulations were only incidentally pertinent in so far as they had a bearing on the questions whether the War Assets Administration was a Government agency and whether Taylor's application for purchase of surplus property was within its jurisdiction. Those questions offered no factual issue for the jury to resolve. They were questions of law, which the Court properly decided.[7]

Appellants maintain that the Court erred in instructing the jury to the effect that it was not necessary for the Government to prove that Taylor's statements were false in all particulars alleged in the indictment, or that appellants caused every such statement to be made, it being sufficient if there was the requisite degree of proof that the statements were false in any one or more particulars alleged and that appellants caused one or more false statements to be made. The instruction correctly stated the law.[8] There was substantial evidence in the record that all of the representations, made by Taylor, were false, as alleged in the indictment, and that appellants caused all of them to be made. If it be assumed, therefore, that the jury based its verdict on only one false representation, and it does not matter which one, there was substantial evidence to support the verdict.[9]

---

[6] The War Assets Administration representative in charge of the surplus property sale at Port Hueneme testified that on July 11, 1946, veterans, and several other priority groups, such as non-veteran automobile dealers, and Federal Government, State, and municipal agencies could purchase on a first-come-first-served basis, without any priority as to each other. The testimony was admitted without any objection on the ground that it was not the best evidence.

[7] Cases cited by appellants, such as Samuel v. United States, 9 Cir., 169 F. 2d 787, where the essence of the charge was the violation of a regulation, or conspiracy to violate a regulation, clearly are distinguishable. There the regulation was directly involved and the jury had to know its requirements in order to determine from the evidence whether it had been violated. Obviously, the omission to give an instruction, or the giving of an erroneous instruction, on such a regulation would be ground for reversal.

[8] Warszower v. United States, 312 U.S. 342, 345, 61 S.Ct. 603, 85 L.Ed. 876; Mathews v. United States, 8 Cir., 15 F.2d 139, 145; Shallas v. United States, 9 Cir., 37 F.2d 692, 694; Lewis v. United States, 9 Cir., 38 F.2d 406, 410; United States v. Otto, 2 Cir., 54 F.2d 277, 279; Levine v. United States, 9 Cir., 79 F.2d 364, 369; United States v. Mascuch, 2 Cir., 111 F.2d 602, 603, certiorari denied, Mascuch v. United States, 311 U.S. 650, 61 S.Ct. 14, 85 L.Ed. 416.

[9] There was a different situation in Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484; and in Samuel v. United States, supra, cited in footnote 7. In the former, a defendant was charged in one count of an information with violation of three clauses of a California Statute. The jury was instructed that proof of violation of any one clause was sufficient. A general verdict of guilty was returned. The Supreme Court found one clause of the statute to be repugnant to the Federal Constitution. Since under the instruction given, it was impossible to determine upon which clause the general verdict rested, and it may have been based solely upon the unconstitutional and invalid clause, the conviction could not be upheld. For similar reasons, the judgment of conviction was reversed in the Samuel case. There, the defendants were accused of conspiring to do a number of unlawful acts, one of which was to sell distilled spirits at prices in excess of the ceiling

In giving the usual instruction that statements and arguments of counsel are not to be regarded as evidence, the Court also said, " * * * stage-play and acting and flirting with the jury by counsel are not evidence in the case." Appellants excepted to the instruction and have assigned it as error on the ground that it prejudiced them by discrediting their counsel with the jury. In the absence of the jury, the Court told the attorney, who represented both of the appellants,[10] that he had given the instruction in that form "on account of your constant flirting, your playing, your acting with the jury." Counsel denied that he had indulged in any such conduct. Since the Court did not name or otherwise single out any particular attorney, we fail to see how any prejudice to appellants could have resulted. If their counsel was innocent of the conduct described by the Court, no harm was done, and if he was guilty of it, he had no cause to complain. Both sides in a contested case should have a fair trial. The Government, as well as the defendants, were entitled to protection from improper conduct and unfair tactics of opposing counsel.

Appellants asked the Court to instruct the jury that the accused should be acquitted if it appeared that the act of making the alleged statements was that of an intermediary, who was "not innocent," and the act was not proximately caused by the accused. The Court declined to do so, but did instruct that the defendants should be acquitted if the jury found that they had not knowingly and willfully caused any false statements to be made, and in defining "cause," without using the word, "proximate," the Court actually gave what amounted to a full and lucid definition of proximate cause. Assuming that the appellants were entitled to have the proffered instruction given, its rejection did not prejudice them since it was, in substance, included in the charge which the Court gave.

Appellant Potolski asserts that the Court erred in refusing to give an alibi instruction offered in his behalf. He argues that it should have been given because there was evidence that he was not in the certification building when Taylor's application was made out. It was not necessary for Potolski to be there at that time to be guilty of the offense charged. He could have participated in the scheme to cause Taylor to make the false statements without ever entering the certification building on July 11. The situation was such that the defense of alibi was not available to Potolski, and the Court did not err in declining to give the instruction.

Appellants also assign as error the refusal of the Court to instruct the jury that evidence of the conduct of the appellants subsequent to July 11 was relevant for the purpose of determining whether appellants committed any offense. The proposed instruction had reference to the testimony that appellants eventually destroyed Taylor's contract and did not complete the purchase of the surplus trucks. The testimony was in evidence for the consideration of the jury, and there was no reason for the Court to specially emphasize it by explaining why it had been admitted. The Court cannot be required to make such comment on every bit of evidence, which either party may consider favorable to his cause. The requested instruction was properly refused.

Appellants contend that the indictment failed to state any offense. It was deficient, they say, in the following particulars: It did not show that the surplus property mentioned was "then" the property of the United States; that the sale was being conducted by the War Assets Administration, an agency of the United States; that the form, filled out by Taylor, was then the required and proper form; or that any rules, regulations, or procedure required "the making of such form." Modern, Federal criminal pleading, as confirmed by the Rules of Criminal Procedure, sanctions a

---

fixed by Maximum Price Regulations. The Trial Court, mistakenly, instructed on an inapplicable regulation so that the jury did not have any proper basis for the determination of the ceiling price. In that case, the general verdict may have been based upon a finding of conspiracy to violate a regulation concerning which the jury had been erroneously instructed.

[10] Appellant Potolski had an additional counsel.

plain, concise statement, in broad outline, of the offense charged, without particularity as to its details.[11] An information, or indictment, is sufficient to meet modern requirements if it alleges basic facts covering the essential elements of a crime against the United States with enough particularity to fairly apprise the defendant of the nature of the charge and to enable him to protect himself from a subsequent prosecution for the same offense.[12] At the outset of this opinion, we summarized the allegations of Count IV of the indictment and the pertinent parts of the statute on which it was based. Examination and comparison of them will disclose that the indictment in the present case is amply sufficient to meet the requirements of the foregoing rule.

 During the cross-examination of Byron N. Taylor, with reference to his application for the purchase of surplus property, he was asked, "You know now that you did commit a felony at that time?" The Court sustained an objection to the question, and appellants assign the ruling as error. In the same cross-examination, Taylor was asked if he did not know when he made the application that he was signing a false document and he answered in the affirmative. It was also brought out that Taylor had not been prosecuted "for this offense" and hoped "not to be." The question might well be considered objectionable as an attempt by counsel to impeach the witness by showing his commission of a felony of which he had not been convicted, but, aside from that, we think the Court did not abuse his discretion by sustaining the objection. In the exercise of sound discretion, the Court may limit the extent of cross-examination and his action in that regard will not be reviewed unless there has been an abuse of discretion.[13]

 Appellants also assign as error the admission of evidence to the effect that the veteran Lauridsen was induced by them to make application for the purchase of surplus trucks. It was not disputed that appellants took both Lauridsen and Taylor to Port Hueneme from Los Angeles and brought them back again after their applications for the purchase of the trucks had been submitted. The Lauridsen and Taylor transactions were very similar and were closely interwoven. Since an element of the charge is that appellants "knowingly and willfully" caused the false statements to be made, we think the evidence of the Lauridsen transaction was properly admitted for the limited purpose of showing the intent of appellants with respect to the Taylor transaction.[14] Evidence of another, or collateral offense, inseparably interwoven with the offense charged, which tends to prove intent, is admissible.[15]

██ It is contended also that the Court erred in permitting cross-examination of

---

[11] Federal Rules of Criminal Procedure, rule 7(c), 18 U.S.C.A.

[12] Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Musey v. United States, 5 Cir., 37 F.2d 673; Webster v. United States, 8 Cir., 59 F.2d 583. Stumbo v. United States, 6 Cir., 90 F.2d 828, 831; Bost v. United States, 9 Cir., 103 F.2d 717, 720, 721; Maloof v. United States, 9 Cir., 159 F.2d 62, 63, certiorari denied, 331 U.S. 818, 67 S.Ct. 1306, 91 L.Ed. 1835; Fippin v. United States, 9 Cir., 162 F.2d 128, 131.

[13] Chevillard v. United States, 9 Cir., 155 F.2d 929, and cases therein cited, page 935, footnote 12.

[14] In overruling an objection to testimony with reference to Lauridsen, the Court instructed the jury as follows: "Any evidence as to any transaction with Lauridsen, ladies and gentlemen of the jury, may not be considered by you and will not be received here as evidence tending to prove any of the transactions alleged in the indictment.

"The fact that there might have been a transaction involving Lauridsen, which is not alleged in the indictment, is no proof that the transactions alleged in the indictment, which did not involve Lauridsen, ever took place. If you find from the evidence that the transactions, alleged in the indictment, or any of them, took place, then you may consider the evidence of a transaction involving Lauridsen for the purpose of determining the intent with which the defendants acted in doing the acts charged in any count of the indictment, if you find from the evidence that they did those acts, but you may consider it for no other purpose."

[15] Wharton's Criminal Evidence, 11th Ed., Vol. 1, Sec. 350; McCormick v. United States, 8 Cir., 9 F.2d 237; Johnston v. United States, 9 Cir., 22 F.2d 1, 5; United Cigar Whelan Stores Corporation v. United States, 9 Cir., 113 F.2d 340, 346, 347; Henderson v. United States, 9 Cir., 143 F.2d 681, 683; McCoy v. United States, 9 Cir., 169 F.2d 776, 783.

appellant Todorow, over objection, concerning a "Dealer License 11-135," which appeared in an application submitted by Todorow for the purchase of surplus trucks at Port Hueneme. It is not necessary to consider whether appellants' objection to the cross-examination should have been sustained, since the admission of the testimony with reference to the license number clearly did not result in any prejudice to appellants. Appellant Todorow denied all knowledge of the license number or of how it came to be inserted in his application and testified that it was not in his handwriting. The cross-examination on that particular point was utterly fruitless and no further evidence with reference to it was introduced.

Appellants contend that the Trial Court was guilty of prejudicial misconduct, which deprived them of a fair trial and of the effective aid of their counsel. In support of the contention, they point out numerous incidents, which occurred throughout the six-day trial, such as the remanding of the appellants to custody when the trial began; the denial of a continuance for as long a period as appellants' counsel desired; the making of comments by the Court in ruling on questions of evidence; the Court's admonition of appellants' counsel during the examination of witnesses and in the argument; and the questioning of witnesses by the Court. It would unduly extend this opinion to discuss, separately, the many incidents of which appellants complain, and it is doubtful if such a discussion would be of much value. Clearly, no one incident is sufficient to warrant reversal, and to determine whether, in the aggregate, they adversely affected the substantial rights of the appellants, it is necessary to consider them in their natural and proper setting, namely, the entire record. We have carefully examined the record for that purpose and have arrived at the conclusion that the Trial Court was not biased against appellants or their counsel; that the Court did not abuse his discretion in denying a

longer continuance; that the Court examined witnesses only for the purpose of clarifying the testimony and bringing out the facts; that appellants' substantial rights were not prejudiced by any conduct of the Court; and that the appellants had a fair trial and the opportunity to fully and adequately present their defense.

The appellants were represented at the trial by able, experienced, and aggressively zealous counsel. While the clashes between counsel and the Court were sharper and more numerous, perhaps, than is usually the case, the record does not indicate that at any stage of the trial the Court entertained any feelings of bias or prejudice toward the appellants or their counsel. The Court's instructions were impartial in tone and scrupulously fair to the accused. The Court did not exercise his right to comment on the evidence. The jury, obviously, was not under improper domination by the Court, since it acquitted appellants on three of the four counts, submitted by the Court.

Moreover, in his instructions, the Court explained that his admonition of counsel was in the interest of orderly procedure and that the jury was to draw no inference against the side to whom any admonition had been addressed by the Court.

The last assignment of error is the Court's denial of appellants' motion for a bill of particulars. The motion requested information as to the names of the persons to whom the forms, mentioned in the indictment, were given, the time, place, and persons present, and the exact language of each application and purchase form involved. The motion was not filed until April 24, 1946, the morning the trial started, five months after the indictment had been returned. It came at a very late hour, but aside from the question whether it was timely, the motion called for evidentiary matters, and, in denying it, the Court did not abuse his discretion.[16]

The judgment of conviction of each of the appellants is affirmed.

---

For a full and enlightening discussion of the exception, with which we are here concerned, to the general rule that in a criminal trial, evidence of commission by the accused of some separate, independent offense is inadmissible, see: Tedesco v. United States, 9 Cir., 118 F.2d 737, 739-741.

[16] See Fredrick v. United States, 9 Cir., 163 F.2d 536, and cases cited at 545, 546.