**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Milton W. LEWIS and Lee Roy Sohn, Defendants-Appellants.**

**No. 16227.**

United States Court of Appeals Seventh Circuit.

Jan. 29, 1969.

Rehearing Denied Feb. 14, 1969.

---

Charles A. Bellows, Jason E. Bellows, Sherman C. Magidson, Harry J. Busch, Chicago, Ill., for defendants-appellants; Bellows, Bellows & Magidson, Chicago, Ill., of counsel.

Thomas A. Foran, U. S. Atty., Richard A. Makarski, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

In August 1966, a six-count indictment was returned against Lee Roy Sohn, Milton W. Lewis, and Jerry Pace.[1] The first count charged defendants with a conspiracy to defraud the United States concerning its right to have the transaction of the business of the Veterans'

---

1. This indictment replaced a 1965 indictment that failed to specify in Count I the

Section of the Criminal Code allegedly violated.

Administration "conducted free from deceit, fraud, craft, trickery, dishonesty, unlawful impairment and obstruction," in violation of Section 371 of the Criminal Code (18 U.S.C. § 371). The indictment also contained five substantive counts alleging that various defendants had violated Section 289 of the Criminal Code (18 U.S.C. § 289).

After a jury trial, each defendant was found guilty with respect to all counts in which he was charged. General sentences of one year each were imposed on defendants Sohn and Lewis, together with fines. Defendant Pace was fined and sentenced to a probationary term of two years, with the first 30 days to be spent "in a jail-type institution." Pace has not appealed.

*Sufficiency of the Indictment*

Defendants do not attack the conspiracy count of the indictment, which charges them under 18 U.S.C. § 371, punishing conspiracy "to commit any offense against the United States, or to defraud the United States, or any agency thereof * * *."

■ The substantive counts charge violations of 18 U.S.C. § 289, which provides in pertinent part:

"Whoever knowingly and willfully makes, or presents any false, fictitious or fraudulent affidavit, declaration, certificate, voucher, endorsement, or paper or writing purporting to be such, concerning any claim for pension or payment thereof, or pertaining to any other matter within the jurisdiction of the Administrator of Veterans' Affairs * * *."

Citing Sanchez v. United States, 134 F.2d 279, 282–283 (1st Cir. 1943), certiorari denied *sub nom.* Tapia v. United States, 319 U.S. 768, 63 S.Ct. 1325, 87 L.Ed. 1717, and other cases, defendants contend that this statute relates only to the subject of pension claims. The *Sanchez* case followed the Supreme Court's construction of an earlier version of this statute in United States v. Keitel, 211 U.S. 370, 395–397, 29 S.Ct. 123, 53 L.Ed. 230. In the light of the breadth of the language of the statute, the *Keitel* and *Sanchez* cases seem restrictive in limiting it to pension claims. But we do not need to construe Section 289 here, for defendants concede that the substantive counts of this indictment properly state an offense under Section 1001 of the Criminal Code (18 U.S.C. § 1001), which provides in pertinent part:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined * * * or imprisoned * * * or both."

*Sufficiency of the Evidence*

Count I of the indictment is the conspiracy count and charged that defendants Lewis, Sohn and Jerry Pace conspired with three non-defendant co-conspirators [2] to defraud the United States concerning its right to have the Veterans' Administration official business conducted free from deceit and the like. In 1961 Lewis and Sohn organized Milroy Realty Company, and, after becoming licensed Veterans' Administration brokers, they operated the company as a Veterans' Administration-approved realty company selling repossessed houses owned by the Veterans' Administration. Pace was a salesman for Milroy. To secure approval of sales of these homes to their customers, the defendants purportedly submitted false credit information to the Veterans' Administration concerning prospective purchasers upon VA Form No. 26–6705 for "Credit Statement and Offer of Prospective Purchaser." As part of the conspiracy, they allegedly obtained false credit reports from Hill's Reports, Inc. to substantiate

---

**2.** Milroy Realty Company, Dominic C. Pace, and Hill's Reports, Inc.

the credit information contained on the VA forms. Eleven overt acts, including transactions with prospective customers similar to those alleged in the substantive counts, were alleged in furtherance of the conspiracy.

■ We conclude that there was ample testimony to prove the conspiracy charged in Count I. Much of the supporting evidence is summarized below under Counts II through IV. The falsified Veterans' Administration forms were always signed by Sohn or Lewis. Sohn himself placed false information on these statements. In the instance covered by overt act 5, prospective purchaser William Rodriguez gave correct credit information to both defendants and Lewis signed the falsified application that was filed with the Veterans' Administration. Similarly, the credit statement filed on behalf of Meddie Dampier, Jr., falsely represented that the applicant had no debts and overstated the value of some assets and listed nonexistent assets, all in contradiction to the information which the applicant had supplied to Sohn. Both defendants arranged with Hill's Reports for the speedy delivery of unchecked credit information. Through the falsified transactions, their creature, Milroy Realty Company, was enabled to receive commissions from the Veterans' Administration. We are satisfied that there was more than sufficient evidence to support the jury's verdict that these two defendants engaged in the conspiracy charged, even though some of the eleven overt acts might not have involved them sufficiently to constitute separate substantive offenses.[3]

Count II charged that in September 1962, defendants Lewis and Sohn presented to the Veterans' Administration a Credit Statement and Offer of Prospective Purchaser form signed by Theodore R. Gardner falsely representing that Gardner had no financial obligations. Like the remaining four Counts of the indictment, this was said to violate Section 289 of the Criminal Code, but defendants concede that these five Counts adequately charge a violation of Section 1001 of the Criminal Code.[4] In support of Count II, the Government introduced in evidence Milroy Realty Company's invoice, signed by Sohn, to the Veterans' Administration for $825 commission on the sale of a repossessed house to Gardner, as well as a Hill's Report showing Gardner's net worth to be $6100. The Government also introduced the Credit Statement and Offer of Prospective Purchaser form signed by Gardner on September 6, 1962, and also signed by Sohn for the Milroy Realty Company on the same date. This credit statement contained the typed answer "None" as to Gardner's creditors.

Sohn testified that Lewis handled this transaction with Gardner. He said that Gardner came to the Milroy office because Lewis had sold Gardner's brother a home. Gardner testified that he told Sohn that he owed $200 to the Goldblatt's Department Store and $700 in car payments and $800 to the Goldenberg Furniture Company. He said that the VA form was being typed out as he spoke to Sohn on September 6 at the Milroy Realty Company's office. Gardner testified that Lewis was present in the office and was typing the form or asking him questions.

■ Viewing the evidence in the light most favorable to the Government (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680), the Sohn and Gardner testimony, together with the documentary evidence, sufficiently involves both Lewis and Sohn in this transaction, so that the district court correctly denied their motion for judgment of acquittal.

Count III charged that defendant Sohn presented another fraudulent Cred-

---

3. The proof as to the transactions underlying overt acts 6, 7, 9, 10 and 11 involved only Lewis or Sohn signatures on fraudulent credit statements. See the discussions of the sufficiency of the evidence under Counts V and VI, *infra*.

4. See discussion *supra*, pp. 406–489.

it Statement and Offer of Prospective Purchaser to the Veterans' Administration on January 18, 1963. The form stated that another prospective purchaser, William M. Swain, "had no obligations, had $500.00 in U. S. Savings Bonds, Stocks, and other securities, had $350.00 in cash on hand and on deposit, that he owned a 1952 Super Buick hardtop worth $300.00." Swain testified that he discussed the Veterans' Administration form with Sohn and told Sohn that he had no securities. Sohn told Swain that he would list $500 in securities in order to secure Veterans' Administration approval of the house purchase. Swain said that he told Sohn he only had $200 in cash on hand, but Sohn listed the amount as $350 on the form. Swain advised Sohn that he owned a 1957 Cadillac as well as the 1952 Buick, but Sohn said that he would not list the Cadillac because Veterans' Administration approval could not be obtained if both cars were listed. Swain also told Sohn that he had $200 worth of mechanic's tools, but Sohn listed them as $1500. He also listed Swain's furniture and appliances at $5,000 even though Swain testified that he did not have such assets. Swain also told Sohn of various debts, but Sohn listed them as "None." Interestingly enough, the Hill's credit report on Swain, submitted to the Veterans' Administration by Sohn, shows Swain's net worth as $7,650, the same amount as the various assets listed on the Veterans' Administration form prepared by Sohn and executed by him and Swain.

■ ■ The jury was of course entitled to credit Swain's testimony, which amply supports the charge of Count III. However, Sohn contends that since Swain actually owned a 1952 Buick worth $300, the proof did not conform to the indictment, so that there was a fatal variance within the rule of Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. But Count III charged the making of a fraudulent credit statement, and it was legitimate to prove that the statement that Swain had one car was false because he had two. See

Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. Count III gave adequate notice of facts to be proved. Any variance was minor, with no possibility of surprise and no danger of double prosecution.

Count IV charged that Sohn and Jerry Pace presented another false credit statement to the Veterans' Administration on January 23, 1963, involving prospective purchaser Robert G. Boege. The credit statement, which was received in evidence, showed that Boege had $150 cash on hand, whereas he testified that he had no cash on hand. It showed he had securities worth $125, while he testified that he had no securities. It listed his furniture as $5,500, but Boege testified that his furniture was not worth that amount. It showed him as the owner of a 1957 Chevrolet worth $1,000, whereas his testimony was that he owned only a 1955 Hudson. It listed him as having a life insurance policy of $10,000, but Boege stated that it was only a $5,000 policy. Finally, the statement listed his creditors as "None," although Boege testified that he had advised Sohn that he owed a loan company $700, that he owed Sears, Roebuck $500 or $600, and that he owed his credit union $200. Boege testified that he signed the Credit Statement and Offer of Prospective Purchaser in blank. The statement itself shows January 23, 1963, as the date that Boege signed, and February 3 as the date of Sohn's signature. As with the previous Counts, there was ample testimony for the jury to base its finding that Sohn was guilty as charged in Count IV.

■ Although the indictment inadvertently charged the credit statement falsely represented that Boege had $1,000 in life insurance, it was legitimate to show Sohn had overstated the insurance in the amount of $5,000 above the actual $5,000 insurance owned by Boege. Cf. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

■ Counts V and VI charged that in March 1963, Lewis and Jerry Pace submitted fraudulent Veterans' Administration forms to that agency with re-

spect to purchasers Edward M. Armstead and Loran A. McClintock. Our study of the evidence shows that the credit statements were fraudulent. On the other hand, Lewis' only involvement with either transaction was his purported signature on the two credit statements. Absent any testimony tending to associate Lewis with the gathering of information for these statements, that is insufficient evidence of consciousness of guilt, so that the charges against Lewis under both these Counts must be dismissed. United States v. Fabric Garment Co., 262 F.2d 631, 640 (2d Cir. 1958), certiorari denied, 359 U.S. 989, 79 S.Ct. 1117, 3 L.Ed.2d 978.

### Non-disclosure of Pace's Grand Jury Testimony

■ Before and at the commencement of the trial, defendant Pace moved for production of the minutes of his July 1965 grand jury testimony in order to refresh his recollection regarding the indictment transactions. Production was refused. The Government concedes that defendants Lewis and Sohn are entitled to question this ruling.

Pace declined to testify. Lewis and Sohn assert that if Pace had been permitted to view his grand jury testimony, he would have testified to their benefit. This is purely speculative, so that no abuse of discretion by the trial judge has been shown under Rule 16(a) (3) of the Federal Rules of Criminal Procedure. Moreover, defendants are in effect asking us to apply the liberalized rule of United States v. Amabile, 395 F.2d 47, 53 (7th Cir. 1968), but that holding is applicable only to trials commencing after April 26, 1968.[5]

### Admission of Prior Consistent Statements

■ The trial court received in evidence certain 1965 FBI statements of witness Gardner after defendants attempted to impeach him through his 1964 FBI statements. The question of admitting prior consistent statements is normally one for the discretion of the trial judge. Beaty v. United States, 203 F.2d 652, 656 (4th Cir. 1953), vacated and remanded on other grounds, 348 U.S. 905. Where, as in this case, there is doubt as to whether the impeaching statements were made or as to their scope, prior consistent statements may be admitted. United States v. Corry, 183 F.2d 155, 157 (2d Cir. 1950). It is not necessary that the consistent statement predate the inconsistent statement so long as is predates any motive to falsify testimony. United States v. Keller, 145 F.Supp. 692, 696–697 (D.N.J. 1956). Here, however, the 1965 statements were made when Gardner had a motive to fabricate in order to exculpate himself and therefore should not have been received. United States v. Sherman, 171 F.2d 619, 622 (2d Cir. 1948), certiorari denied sub nom. Whelan v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738; III Wharton's Criminal Evidence (12th ed. 1955) 435–439; IV Wigmore on Evidence (3d ed. 1940) § 1126. If there were other cumulative errors, the harmless error rule of Rule 52(a) of the Federal Rules of Criminal Procedure might not apply. United States v. Donnelly, 179 F.2d 227, 232, 233 (7th Cir. 1950). But here, as in United States v. Potash, 118 F.2d 54, 57 (2d Cir. 1941), certiorari denied, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540, the 1965 corroboration was of no great significance in the Count II case against Lewis and Sohn. We cannot say that under these circumstances the trial judge so abused his discretion in receiving this testimony as to compel reversal. Affronti v. United States, 145 F.2d 3, 7 (8th Cir. 1944). Moreover, the convictions must stand since there was evidence to support the jury's findings that they were guilty on other counts, thus justifying the one-year general sentence imposed. United States v. Cephas, 263 F.2d 518, 519 (7th Cir. 1959).

5. We need not decide whether *Amabile* would apply to these facts if this trial had occurred after April 26, 1968.

*Limits on Defendant Sohn's Direct Testimony*

■ Defendant Sohn asserts that the trial court unduly limited his direct testimony. He was not permitted to say whether Robert Boege's Veterans' Administration credit statement of January 23, 1963, allegedly filled in by Sohn and Pace, "truly and accurately represent[s] everything that was said" by Boege to Sohn on that date. We agree with the Government that Sohn was not competent to compare this credit statement with what Boege had told him, for Sohn testified that he did not recall Boege's "representations made as to his financial condition."

■ During the Government's case, William Swain testified that he told Sohn he had about $200 cash on hand and on deposit. The court ruled that Sohn's counsel could therefore ask Sohn whether that statment was made, thus allowing defense counsel to refute the testimony of a Government witness. The court permitted Sohn to say that Swain actually claimed to be possessed of $350 cash on hand and on deposit. Since defense counsel was permitted to make this point, there was of course no undue limitation of Sohn's direct examination. The court properly refused to let Sohn use Swain's January 18, 1963, Veterans' Administration credit statement because Sohn testified he remembered the transaction, so that it would be improper to read from the credit statement. National Labor Relations Board v. Hudson Pulp & Paper Corp., 273 F.2d 660, 665 (5th Cir. 1960) ; see Annotation, 82 A.L.R. 2d 473, 493.

■ The court's rulings in limiting the leading questions asked of Sohn by his counsel were well within its discretion and accordingly will not be disturbed. United States v. Montgomery, 126 F.2d 151, 153 (3d Cir. 1942), certiorari denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754 ; City-Wide Trucking Corp. v. Ford, 113 U.S.App.D.C. 198, 306 F.2d 805, 807 (1962).

*Testimony as to Defaults by Purchasers*

■ Walter Budzyn, an official of the Veterans' Administration, was allowed to testify that some of the prospective purchasers approved by Milroy had defaulted, but the court ruled that their number was immaterial. The permitted colloquy was as follows:

"Q. Of the prospective purchasers approved, have any of them defaulted?

\* \* \* \* \* \*

The Witness: Yes."

Surely this brief reference to losses, which defendants' reply brief concedes may sometimes be the result of fraud, would not prejudice the jury against defendants.

*Similarity Between Credit Statements and Hill's Reports*

■ Mr. Budzyn was permitted to testify that "We noticed that there was a similarity between the credit statement[s] [filled out and submitted by Milroy] and the Hill's Reports." This was a permissible description of voluminous documents rather than an impermissible invasion of the jury's function. Allen v. Matson Navigation Co., 255 F.2d 273, 278 (9th Cir. 1958). It was still left to the jury to determine whether defendants had obtained false credit reports from Hill's as charged in Count I. Budzyn expressed no opinion on that subject.

*Denial of Speedy Trial*

■ Finally, defendants assert they were denied a speedy trial in derogation of the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure. The investigation of defendants' 1962–1963 activities commenced in October 1963, but the grand jury phase did not occur until July 1965, and the present indictment was not returned until August 30, 1966.[6] These delays were well within the applicable five-year statute of limitations (18 U.S.C. § 3282) and hence were not untoward absent a showing of prejudice. United States v. Deloney, 389 F.2d 324, 325 (7th Cir. 1968),

6. See note 1, supra.

certiorari denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417. As in United States v. Jones, 403 F.2d 498 (7th Cir. 1968), defendants have not satisfied us that they were prejudiced by the pre-indictment delays.

The period between indictment and trial was only five months, quite a short period in a busy metropolitan court. Some of this time was consumed by defendants' pre-trial motions. In any event, such a comparatively brief delay violates neither the Sixth Amendment nor Rule 48(b).

Defendant Lewis' conviction cannot stand under Counts V and VI. However, his conviction under Counts I and II and defendant Sohn's conviction under Counts I, III, and IV were proper and justify the general sentence imposed. The judgment is affirmed.