THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERRIBERTO RODRIGUEZ, Defendant-Appellant.

First District (3rd Division)    No. 76-873

Opinion filed March 22, 1978.

564

Rodgon & Schwartz, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Wendy Paul Billington, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, Herriberto Rodriguez, was found guilty by a jury of aggravated battery and attempt murder, and sentenced to a term of from 4 to 12 years. He was convicted for shooting Raymond Torres.

The shooting occurred in the defendant's tavern where Torres was a patron. Torres had arrived there with his friend, Jorge Medina, at about 9 p.m. After Torres and Medina had played pool and had several beers, they were joined by Torres' wife, her granddaughter and a friend. The shooting took place approximately 2 hours after Torres and Medina arrived at the tavern.

Torres testified that he was standing near the bar waiting for a beer when he was shot in the hand and right side by the defendant, who was not behind the bar, but on the side of the pool table opposite Torres. Torres denied that he had any weapon in his hand at the time of the shooting, and also denied that he said anything to the defendant about a

stickup. He testified that he did not remember that the defendant said anything to him before or after the shooting. When the defendant started shooting at him, Torres said he tried to protect himself by crawling behind the bar.

Medina's testimony was that he observed the shooting while sitting at a table approximately 8 feet from Torres, who had nothing in his hands. He said that the defendant was about 15 to 20 feet away, and that the tavern was crowded with 25 to 30 people. He denied telling any police officer that he did not see any of the shooting because he was in the washroom.

Police officer Henry Weidebush, called as a defense witness, said he investigated the shooting immediately after it took place. His report indicated Medina told him he was in the washroom when the shots were fired. But Weidebush further testified that he realized his report was erroneous when he sat in on a statement Medina was giving to an assistant State's Attorney about 6 hours after the shooting.

The defendant's version of the incident was that shortly before 11 p.m. Torres entered the tavern and walked behind the bar. The defendant claimed that he was working alone behind the bar, that he did not know Torres had been in the tavern for 2 hours before the shooting and that he first saw Torres when Torres came behind the bar. The defendant said he never had seen Torres; nor had Torres spoken to him. Torres had a jacket on his left arm, and his right arm was in his pocket. When Torres announced a stickup, the defendant reached for his gun behind the bar and fired one shot at Torres, shooting him in his arm. The defendant immediately called the police. The defendant denied being outside the bar near the pool table when the shot was fired, insisting he was behind the bar when he shot Torres.

Carlos Vasquez, who worked as a security guard at the defendant's tavern, testified for the State in rebuttal that when he arrived at the tavern about 7 p.m., the defendant was walking around talking with customers. Another bartender was serving drinks. At about 11 p.m. Vasquez was alone in the washroom and, hearing something sounding like a shot, he looked out and saw the defendant standing near the pool table with a gun in his hand and with two men holding him, one on each side. Vasquez walked a few steps outside the washroom and saw Torres lying on the floor inside the bar. Vasquez went over to Torres, who was bleeding a great deal, and knelt beside him. Vasquez did not see any coat or jacket or anything near Torres as he was lying on the floor.

Vasquez also testified that someone other than the defendant ran toward the door with the gun, and Vasquez told the person to stop and give the gun to him. After Vasquez had the gun, the defendant in turn told Vasquez to give him the gun and said, "If you don't give me the gun I will tell the police that you shot him."

Torres testified that he had a jacket that evening but that he was not wearing it at the time of the shooting. He stated that he took off the jacket and put it on the back of a chair when he started to play pool. The jacket was offered in evidence by the State without objection by the defendant, and the defendant acknowledged that the jacket had neither bullet holes nor blood when introduced.

On appeal the defendant questions whether he was proved guilty beyond a reasonable doubt. He also objects to what he claims were the following five prosecutorial errors: a request made during the defendant's closing argument to reopen the State's case; a reference to probation during the prosecutor's rebuttal argument; inquiries into whether Torres was Catholic and received the last rites of the Catholic church; the improper rehabilitation of the State's witness Medina through the testimony of police officer Weidebush that the witness had made prior consistent statements; and comment in the prosecutor's initial closing argument on the defendant's failure to call certain witnesses. Finally, the defendant contends that the trial court erred by failing to instruct the jury that the State was required to prove beyond a reasonable doubt that the defendant was not justified in using the amount of force he did to protect his person.

In regard to the defendant's first contention that the evidence was insufficient to sustain his convictions, the State maintains that the testimony of the victim and his friend Medina, plus Vasquez's rebuttal testimony and the condition of the victim's jacket, when contrasted with the defendant's improbable version of the events leading to the shooting, establish the defendant's guilt beyond a reasonable doubt. We agree with the State's position.

The positive and credible testimony of a single witness is sufficient to sustain a conviction, even though that testimony is contradicted by the accused. (*People v. Echoles* (1976), 36 Ill. App. 3d 845, 853, 344 N.E.2d 620.) Resolution of conflicts in evidence and a determination of the credibility of the witnesses and the weight to be accorded their testimony is for the trier of fact, whose determinations will not be reversed unless the evidence is so unsatisfactory, improbable or impalpable as to create a reasonable doubt of the defendant's guilt. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.

Here, the evidence was sufficient for the jury to conclude that when the defendant shot Torres, he did not reasonably believe that his conduct was necessary to prevent the commission of a forcible felony. (Ill. Rev. Stat. 1975, ch. 38, par. 7—1.) There was evidence that at the time that he was shot, Torres had no weapon, was not saying anything to the defendant, and was simply waiting for a beer he had ordered from the bartender.

The defendant's testimony that he was behind the bar when he shot

Torres was contradicted by the testimony of both Torres and Medina that the defendant was alongside the pool table. Vasquez testified that the defendant was walking around the tavern and talking with customers before the shooting, and that he also saw the defendant being held by two men at one side of the pool table immediately after the shots were fired. The condition of the jacket defendant claimed Torres was carrying over his arm when he announced a stickup is also relevant, since the evidence revealed that there was no blood on it despite the fact that Torres bled profusely after the defendant shot him. The evidence showed that the defendant failed to mention at the preliminary hearing that Torres announced a stickup just before the defendant shot him, which was part of his trial testimony.

■■ ■ Thus, the evidence was sufficient to establish beyond a reasonable doubt that the defendant was guilty of attempt murder (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 9—1) and aggravated battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—4).

We next turn to the five prosecutorial errors which the defendant raises. The defendant filed a written motion for a new trial and later amended that motion. Only one of the prosecutorial errors which the defendant now advances was set forth in his post-trial motions. That alleged error was the prosecutor's reference to probation. The State correctly maintains that by omitting the other four claimed errors from his post-trial motions, the defendant has waived them. The failure to present a reviewable issue in a written motion for a new trial constitutes a waiver of that issue. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Nelson* (1968), 41 Ill. 2d 364, 366, 243 N.E.2d 225.) This general rule is applicable even when the issue involves a constitutional right. (*Pickett*, at 282; *People v. Daily* (1975), 30 Ill. App. 3d 413, 418, 332 N.E.2d 146.) However, after reviewing the prosecutorial errors which the defendant advances in this court, our conclusion is that they would not have justified reversal even had they been included in the defendant's post-trial motions.

One of the factual questions raised by the evidence was why the jacket the defendant claimed Torres was carrying had neither bullet holes nor blood. While defense counsel argued this point during closing argument, the following interchange occurred:

"[Defense counsel]: Now, Mr. Hartman tells you that Raymond Torres had no weapon and that there was no blood on his jacket. With respect to the jacket, I am sure you know that Herriberto Rodriguez did not have that jacket for a year. He didn't put it in that little box and tie it up. Mr. Hartman took that jacket out of that little box. You know Raymond Torres—

Mr. Hartman [Assistant State's Attorney]: Your Honor, if counsel wants to know, we will ask—

> Mr. Maloney [Defense counsel]: No, no, you will not ask any more questions. You had your chance.
>
> Mr. Hartman: Well, I would ask to reopen the case.
>
> Mr. Maloney: I would ask not to be interrupted, your Honor.
>
> The Court: Counsel, please. Professional lawyers do not interrupt."

A short time later a similar exchange took place, in which the defense counsel insinuated that the State might have tampered with the jacket, whereupon the State again asked for leave to reopen the case.

■■ ■ When defense counsel by his argument invites or provokes a response on the part of a prosecutor, he cannot complain that he has been prejudiced by the response. (*People v. Lewis* (1962), 25 Ill. 2d 442, 446, 185 N.E.2d 254; *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581.) A defendant who acquiesces in the admission of improper evidence cannot complain in closing argument that it was received. The prosecutor, in asking leave to reopen the case, was responding to defense counsel's unwarranted inference that there had been improper tampering. The jacket in question here had been admitted into evidence without objection on the part of the defendant. There was no basis for the defense counsel's insinuation that because the jacket had been in the custody of the prosecutor, it may have been tampered with.

The defendant also objected to portions of the interrogation of Torres and his wife designed to bring out that Torres had received the last rites of the Catholic church. All of these questions were objected to and the objections were sustained. The only exception was that Torres was asked if he was a Catholic and answered in the affirmative before any objection was lodged.

■■ ■ Even if we concede that the questions propounded were improper to show the seriousness of Torres' injuries, any error caused by the questions was harmless. Where a defendant has been proved guilty beyond all reasonable doubt by competent evidence, a reviewing court will not overturn the jury's verdict because of improper but unanswered inquiries where objections have been made and sustained, unless the conduct of the prosecutor has been so prejudicial that even after the objection the conduct produced a result which otherwise would not have been reached. *People v. Laurry* (1972), 5 Ill. App. 3d 713, 717-18, 283 N.E.2d 895.

The only question that was answered, in spite of a pending objection, was the prosecutor's inquiry of Mrs. Torres as to whether or not her husband was Catholic. The jury, however, was then specifically instructed to disregard the question and answer. Moreover, before retiring, the jury was given special instructions about sympathy and

prejudice, withdrawn questions, stricken testimony, and sustained objections. By promptly sustaining defense counsel's objections and by the subsequent instructions to the jury, the trial court cured and rendered harmless any error that may have occurred. *People v. McClure* (1976), 42 Ill. App. 3d 952, 356 N.E.2d 899.

■■ The defendant contends that his attempt to impeach Medina by showing that he told Officer Weidebush he was in the washroom when the shooting occurred was improperly hampered by the prosecution's use of a prior consistent statement to rehabilitate Medina's testimony. The general rule is that evidence of prior statements consistent with a witness's trial testimony is inadmissible to rehabilitate a witness who has been impeached by a prior inconsistent statement. (*People v. DePoy* (1968), 40 Ill. 2d 433, 438-39, 240 N.E.2d 616.) Where, however, there is doubt as to whether the impeaching statements were, in fact, made, prior consistent statements should be admitted. (*United States v. Lewis* (7th Cir. 1969), 406 F.2d 486, 492; *United States v. Corry* (2d Cir. 1950), 183 F.2d 155, 157; 4 Wigmore, Evidence §1126, at 260-61 (Chadbourn rev. 1972).) While a consistent statement may not explain away a self-contradiction, it may help the jury, which must determine whether the witness actually made the alleged prior inconsistent statement.

This exception is especially appropriate here. There is no direct evidence that Medina made any statement to Officer Weidebush. Weidebush never stated that he talked to Medina in preparing the report, and Medina himself denied ever stating he was in the washroom. In fact, Medina gave a contradictory statement to an assistant State's Attorney the night of the shooting only a few hours after Weidebush prepared his report. Further, Weidebush testified that when he heard this later statement he realized his report was erroneous, and Weidebush indicated that his report was a composite summary of items he learned of both personally and from other sources.

Substantial doubt could have existed in the jurors' minds that Medina made the statement incorporated in Officer Weidebush's report which impeached his testimony. The statement, consistent with Medina's trial testimony, was admissible to assist the jury in determining whether Medina ever made the alleged impeaching statement. It also was proper to rebut the inference raised by defense counsel that Medina had changed his story.

■■ The defendant's next allegation of prosecutorial error is that an indirect reference to probation during the prosecutor's rebuttal closing argument constituted reversible error. The allegedly objectionable reference to probation was clearly made in passing during the assistant State's Attorney's discussion of requirement of proof beyond a reasonable

doubt in all criminal cases. While he referred to probation, he also referred to prison. He was not discussing the case being tried, but was discussing the trial of criminal cases generally.

We do not believe this oblique reference to probation influenced the jury or prejudiced the defendant. The defendant's claim that the prosecutor was inferring that it was part of the jury's duty to put the defendant on probation is not supported by the record. The prosecutor's comment in this case was not the same as those condemned in *People v. Burgard* (1941), 377 Ill. 322, 330-31, 36 N.E.2d 558, and in *People v. Neely* (1974), 18 Ill. App. 3d 287, 292-93, 309 N.E.2d 725, where the prosecutors implied that probation was possible for the defendant. More instructive here is *People v. Cimino* (1970), 45 Ill. 2d 556, 561, 257 N.E.2d 97, where the prosecutor stated in closing argument, "the defendant is eligible for probation on this case." In affirming the defendant's conviction, the court there stated that the comment, although improper, was not sufficiently prejudicial to require a reversal. The court further stated that the trial judge was in the best position to determine what effect, if any, these remarks had upon the jury. (*Cimino*, at 561.) Similarly, in the case at bar, the trial court, which considered and denied the defendant's motion for a new trial, was in a better position than this court to judge the effect that the word "probation" might have had upon the jury.

■■ The defendant claims another error in the prosecutor's comment during closing argument that two persons, a lady friend of the defendant and his brother-in-law, were in the tavern at the time of the shooting, but were not called as witnesses. The State contends that this statement did not leave the impression that these two persons, if called, would have testified adversely to the defendant, particularly in view of the prosecutor's later acknowledgment that the two persons were accessible to the State.

The record leads us to the conclusion that the prosecutor's statement implied that these two potential witnesses were not called by the defendant because their testimony would have conflicted with defendant's account of a stickup. The State's argument therefore constituted error by arguing unfavorable inferences from the defendant's failure to call witnesses who were admittedly equally available to the prosecution. (*People v. Pearson* (1972), 2 Ill. App. 3d 861, 863, 277 N.E.2d 544.) However, in view of the strong testimony of Torres, Medina and Vasquez, and the other evidence, which negate the defendant's story of an attempted robbery, we view this error as harmless.

■■ Finally, the defendant relying on *People v. Looney* (1977), 46 Ill. App. 3d 404, 361 N.E.2d 18, claims that the trial court committed reversible error by failing to include in its instructions Illinois Pattern Jury Instructions, Criminal, No. 24.06 (IPI Criminal) relating to justifiable use

of force in self-defense or in defense of another. IPI Criminal No. 24.08, covering justifiable use of force in defense of property, was given. The defendant did not submit IPI Criminal No. 24.06 to the trial court and he raises this claim for the first time in his reply brief. This alone warrants our rejection of the defendant's contention, unless the defect in the instruction was so substantial that it denied him a fair trial and justice. Ill. Rev. Stat. 1975, ch. 110A par. 451(c); *People v. Wright* (1974), 24 Ill. App. 3d 536, 321 N.E.2d 52.

And, despite the defendant's argument, *Looney* does not require in the present case that IPI Criminal No. 24.06 be given in addition to IPI Criminal No. 24.08. In *Looney*, a security guard, upon whom the defendant was charged with committing a battery, testified she attempted to stop the defendant from driving her car out of a shopping center because the defendant was suspected of shoplifting. The defendant denied that the security guard announced her office and stated that the security guard, dressed in civilian clothes, opened the door of the defendant's vehicle and grabbed defendant's 4-month-old son by his shirt, leading the defendant to believe that the security guard was abducting her son. The court concluded IPI Criminal No. 24.06 should have been given because there was evidence from which the jury could have believed that the defendant attacked the security guard to protect her son.

■■ In the case before us, however, defendant's only defense was that he was attempting to halt a robbery. Unlike the accused in *Looney*, the defendant has not made any claim or presented any evidence that his conduct was motivated by a belief that he needed to protect himself or another from physical harm rather than a need to protect his property. Under these facts, IPI Criminal No. 24.06 was not required.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.