THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH STANLEY, Defendant-Appellant.

Second District   No. 77-190

Opinion filed July 28, 1978.

Ralph Ruebner and Michael Mulder, both of State Appellate Defender's Office, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Malcolm F. Smith, John A. Wasilewski, and J. T. Elsner, III, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendant, Kenneth Stanley, was convicted after a bench trial of two counts of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). He appeals, contending: (1) he was denied his right to the effective assistance of counsel because his attorney failed to move to suppress identification testimony which could have been the product of a warrantless arrest; (2) the identification of defendant was insufficient to prove his guilt beyond a reasonable doubt; and (3) he was denied the effective assistance of counsel when the alibi defense of his co-defendant created a conflict for their jointly retained attorney.

On December 28, 1975, at about 5:30 p.m., two black men entered the Baskin-Robbins ice cream store inVilla Park and, armed with a revolver, robbed the proprietor, George Kukla, and a customer, Charles Dietrich, of several hundred dollars and two wristwatches. The victims gave descriptions to Villa Park police which were relayed to other area law enforcement agencies. Several weeks later a Chicago police department detective contacted Villa Park investigators and told them an informant had given him the names of defendant and James Little as the men who had robbed several Villa Park businesses; by the approximate dates of the robberies and descriptions of the robbers, the Villa Park officers believed these were the robberies of the Convenient Food Mart and Baskin-Robbins in Villa Park. Villa Park police were informed that when the Chicago police "picked up" the suspects on the Chicago charges a lineup would be held which the victims in the Villa Park robberies could also view. Defendant and Little were taken into custody on January 13, 1975, on Chicago robbery charges; the record before us does not reveal whether defendant's arrest was made with or without a warrant. Because the Villa Park police could not take their witnesses to Chicago to view the lineup held the day defendant was arrested, Chicago police supplied Villa Park with photographs of it. On the basis of identifications made by a witness, Dietrich, from those photos, defendant and Little were charged by information with the Baskin-Robbins armed robbery.

Defendant and Little were both represented at trial by the same privately retained attorney; he received discovery from the State including police reports detailing both the Chicago and the Villa Park investigations which led to defendant's and Little's arrest on the Villa

Park charges. Defense counsel made no other significant pretrial motions. Several months before trial he suggested to the trial court that there were "certain things that show some conflict" and told the court he would inform it if he found a conflict but at no later time did he inform the court that the defenses of Stanley and Little in fact created a conflict for him as joint counsel nor did he move prior to trial that the cases be severed or that he be allowed to withdraw as counsel for either defendant or Little. Sometime later the separate informations which had been filed against each defendant on these charges were consolidated for trial without objection by defendants and were heard by the court in a bench trial.

At trial Ralph Vucko, a Chicago police department detective, testified he arrested defendant and Little in Chicago on January 13 and identified the lineup photographs which had been sent from Chicago to the Villa Park police department. When defense counsel asked Vucko whether he had arrest warrants for defendant and Little when he placed them in custody, the State's objection was sustained, the trial court indicating that the existence of an arrest warrant could properly have been the subject of a pre-trial motion.

Charles Dietrich testified he was in the ice cream store on December 28 at about 5:25 p.m. The clerk was waiting on a young girl when Dietrich saw two black men enter the store. One was well-dressed and wore a dark leather coat, a hat with "a beak and a button" and dress pants. Dietrich identified James Little as this man. Dietrich said the other man, whom he identified as defendant, had close-cropped hair, an unkempt beard, a coat and dirty slacks. After the girl left the store, the clerk waited on Dietrich and, as Dietrich paid for his purchase, Little put a gun next to Dietrich's head, pointing it at Kukla, the clerk, and told Dietrich and Kukla to look at the ground. The robbers took Dietrich's wallet, both men's watches and the money from the cash register and left the store. Dietrich testified he observed defendant and Little for about 30 seconds when they first entered the store but did not look at them again after the man with the gun told him to look down. Dietrich testified he went to the Villa Park police department about a month after the robbery and looked briefly at the lineup photos. He identified defendant as one of the robbers but picked out someone other than Little as the man with the gun. Several days later he requested to view the photos again as he had insufficient time to do so on the first occasion; on his second view of the photos he identified both defendant and Little as the robbers.

George Kukla, the proprietor of Baskin-Robbins, testified that Dietrich was his only customer when the two men entered the store and one walked up to the cash register and pointed a gun directly at him. The man told him to look down, then took Kukla's watch and $175 from the cash

register and Dietrich's wallet and watch. Kukla testified that he had only a quick glance at the two men when they came in; he noticed that they wore dark clothing and one wore a leather beret-type hat but he could not identify either man from the photos or make any in-court identification of either defendant or Little.

Detective Schorman of the Villa Park police department testified he showed the lineup photographs to Dietrich about a month after the robbery. Dietrich told him he needed more time to look at them than he had had previously. Schorman told Dietrich that two suspects were in the photos and Dietrich viewed them for about 45 minutes and picked out both defendant and Little.

Dorothy Little, the sister of James Little, and Flora Wilson, his girl friend, testified they were with Little at his mother's house from 2:30 p.m. until 8:30 on the date of the robbery. Both testified they did not see defendant at any time that day. Several witnesses, including defendant's mother, testified that defendant was at his mother's house from 4 p.m. until at least 6:30 p.m. on the day of the robbery and that both he and Little had dinner there at 5 p.m. or 5:30.

The trial court found James Little not guilty and defendant guilty of armed robbery.

Defendant first contends he was denied the effective assistance of counsel because his trial attorney failed to seek suppression of evidence relating to his identification. Appellate counsel now argues that the photograph of the lineup and defendant's subsequent identification by the robbery victim were products of his illegal arrest and should have been suppressed.

The record discloses that defendant was arrested in Chicago by Chicago police on Chicago robbery charges; it does not reveal on what basis he was taken into custody there. Defendant did not claim in the trial court that he had been unlawfully detained at the time the lineup took place nor does he now contend that the trial court erred in refusing to permit his counsel from inquiring into his arrest during the course of the trial.

■■ In his brief and argument, however, appellate counsel points out the record does not establish the validity of defendant's arrest, assumes it must have been without a lawful basis, and that trial counsel was therefore incompetent for failing to seek suppression of the fruits of that arrest. It is apparent to us, however, that the legality of defendant's arrest in Chicago cannot be determined on this record and that issue, not having been preserved by a timely pretrial motion to suppress, cannot be raised here. Ill. Rev. Stat. 1975, ch. 38, par. 114—12; see *In re Lamb* (1975), 61 Ill. 2d 383, 387, 336 N.E.2d 753, 756, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.

■■ Defendant contends further, however, that it was the incompetence of his counsel which caused his failure to file a timely motion to suppress raising this issue. The Illinois Supreme Court in *People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142, 146, stated, "the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham." (See *People v. Johnson* (1977), 45 Ill. App. 3d 255, 359 N.E.2d 791.) The burden of sustaining a charge of the inadequacy of counsel rests on defendant. (21 Am. Jur. 2d *Criminal Law* §315 (1965).) In *People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425, the court found that failure of trial counsel to move to suppress a warrant which was thereafter suppressed in the subsequent trial of a co-defendant did not deny defendant the effective assistance of counsel. It is not incompetence for counsel to refrain from raising issues which he has determined are without merit unless his appraisal of the merits is patently incorrect. *People v. Frank* (1971), 48 Ill. 2d 500, 505, 272 N.E.2d 25, 28.

■■ The record before us is insufficient to support a finding that defendant's trial counsel incompetently failed to move to suppress evidence secured by reason of his purported illegal arrest. Appellate counsel asks this court to grant defendant a new trial based on the bare, unsupported allegation that his trial counsel incompetently failed to seek suppression of evidence which might have been the fruit of an illegal arrest. This court would be compelled to engage in speculation, guess and conjecture should we attempt to find support for his contention in this record. (See *People v. Miller* (1977), 49 Ill. App. 3d 1026, 364 N.E.2d 747.) This allegation of incompetency can only be established by facts outside the record and cannot, therefore, be raised on direct appeal. See *People v. Dennis* (1973), 14 Ill. App. 3d 493, 302 N.E.2d 651.

■■ Defendant next contends that the identification testimony was insufficient to prove his guilt beyond a reasonable doubt. While only one witness was able to identify defendant as one of the robbers, the positive and credible testimony of one witness, if believed, is sufficient to sustain a verdict of guilty. (*People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 566, 374 N.E.2d 904, 907.) A determination of the credibility of the witnesses is for the trier of fact, whose determinations will not be reversed unless the evidence is so unsatisfactory or improbable as to create a reasonable doubt of defendant's guilt. (*Rodriguez*, 58 Ill. App. 3d 562, 566, 374 N.E.2d 904, 907.) It does not do so here.

■■ Defendant argues finally that he was denied the effective assistance of counsel because of the conflict created by inconsistencies between defendant's and Little's alibi defenses. While we recognize the principle that every criminal defendant is entitled to the undivided loyalty of

counsel (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67), we do not find that the minor inconsistencies in the testimony of the alibi witnesses here constituted a conflict for defense counsel by which defendant was thereby denied his right to counsel. The United States Supreme Court in the recent case of *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173, held that defendants were denied the effective assistance of counsel where an appointed attorney was required by the trial court to represent in a joint trial three co-defendants whose interests counsel claimed were conflicting and whom he had sought to sever for trial. In the case at bar counsel had been employed by both defendants and made no request that separate counsel be appointed for either defendant or that the cases be severed; in fact, he did not object to their consolidation. While *Holloway* holds that no showing of prejudice is required where counsel who had timely requested that defendants be severed for trial or represented by separate counsel is nevertheless required by the court to proceed in a joint trial, we believe that to establish ineffective assistance of counsel defendant in this instance must show his counsel was incompetent by failing to discover minor inconsistencies between the testimony of various alibi witnesses called by the defendants and that the outcome would probably have been different had he done so. In finding defendant guilty, the trial court stated it believed those witnesses who testified they saw defendant at his mother's house on the date of the robbery but believed they were mistaken as to the time. We find, therefore, that defendant was not denied the effective assistance of counsel in this regard.

For the reasons stated the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

GUILD and RECHENMACHER, JJ., concur.