THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CEDRIC GRISSET, Defendant-Appellant.

First District (1st Division) No. 1—95—2898

Opinion filed May 19, 1997.

622

Stephen E. Eberhardt, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Cedric Grisset, was found guilty of first-degree murder and sentenced to 50 years in prison. On appeal, defendant contends: (1) the trial court erred in refusing to allow the testimony of Detective Luera concerning the statement defendant made to the detective shortly after his arrest; (2) the trial court erred by refusing to give an instruction on second-degree murder based on provocation; (3) the trial court erred in refusing to preclude his court-reported statement; (4) the trial court unduly restricted the direct examination of defendant; (5) the trial court unduly restricted the cross-examination of the assistant State's Attorney; (6) the State made prejudicial comments during closing argument; (7) the trial court denied him his constitutional rights of due process and equal protection when it sentenced a similarly situated codefendant to a substantially lesser period of incarceration; (8) the trial court abused its discretion by sentencing him to 50 years in prison; and (9) the State did not prove him guilty beyond a reasonable doubt. We affirm.

At trial, Essie Gray testified that around 10 p.m. on September 14, 1993, she was sitting in her car, which was parked on May Street between 101st and 102nd Streets. She had driven her brother, Kenneth, to that location so he could retrieve a telephone number from a relative's car. As Kenneth walked towards Essie's car, a second car drove up and parked behind Essie's car. Essie recognized the driver of that car as codefendant Debra Dalloz, and she saw a black man, later determined to be defendant, in the passenger seat.

Essie testified she heard Dalloz say "there he is, there Westside is." "Westside" was Kenneth's nickname. Defendant exited the vehicle and approached Kenneth. The two men stood about one to two feet apart and spoke for approximately five minutes.

Essie testified Kenneth backed up a little bit, and then defendant

pulled a gun and started shooting. Kenneth had nothing in his hands when defendant shot him. Defendant then entered the passenger seat of the car in which he had arrived, and the car drove north on May Street.

Essie testified Kenneth ran toward a backyard between two houses. Essie ran after Kenneth. When Kenneth got to the backyard, he told Essie he had been shot, and he fell to the ground. Essie called the police and told them the offender's car was a blue Horizon. She also described the driver as a 200-pound white lady with blonde hair and a pale complexion. At approximately 7 a.m. the next morning, Essie viewed a lineup at Area Two police headquarters and identified Dalloz as the driver of the car. Detective Frank Luera testified that Essie was unable to identify defendant in a lineup.

Officer George Vanderschoot testified that, at approximately 10:20 p.m. on September 14, 1993, he received a call of a man shot at 10140 South May. When he arrived at the scene, Vanderschoot found Kenneth Gray lying dead on the ground between two buildings. Vanderschoot did not observe any weapons on Kenneth, nor were any weapons recovered from the crime scene. Vanderschoot spoke with Essie Gray, who described the offenders. Vanderschoot then broadcast the description to other police personnel.

Sergeant James Glynn testified that, at approximately 10:17 p.m. on September 14, 1993, he monitored a call of a man shot. Shortly thereafter, he monitored another message describing two offenders who were wanted for the shooting. Glynn began proceeding to 118th and Morgan, where, the message indicated, the vehicle was headed.

Glynn testified that, at approximately 115th and Morgan, he saw the wanted offenders and vehicle proceeding north on Morgan. Glynn made a U-turn and began following them. Glynn broadcast the location and direction of the vehicle. At approximately 115th and Carpenter, several police cars converged on the area and the officers arrested the individuals inside the vehicle. At that time, one of the officers on the scene showed Glynn the butt of a gun sticking out from behind the console on the passenger side of the vehicle. The officers secured the vehicle until the crime lab arrived.

Joseph Thibault, a criminalist with the Chicago police crime laboratory, testified defendant's right palm and left palm tested positive for gunshot residue. Dalloz's left palm also tested positive for gunshot residue. Thibault testified that a person can acquire gunshot residue in three ways: by firing a gun, handling a gun, or being in close proximity to a discharged weapon.

Assistant State's Attorney Peggy Chiampas testified she spoke with defendant on September 15, 1993, in a conference room at Area

Two police headquarters. Also present were Detective Luera and a court reporter, who took down defendant's statement. Defendant told Chiampas that, at about 10 p.m. on September 14, 1993, he was at his grandmother's house when Dalloz came by. Dalloz told him that Kenneth had hit her in the face with a book because Kenneth was upset that she was going to have a drink with another man. Dalloz also told defendant she wanted to kill Kenneth, and she asked defendant to get her a gun or a knife.

Defendant told Chiampas that he grabbed a loaded gun and went outside to a blue four-door Plymouth. Dalloz entered the driver's seat, and defendant entered the passenger seat. Dalloz eventually drove to 101st and May, where she saw Kenneth. Dalloz told defendant to get out of the car. Defendant pulled the gun out of his pocket, walked up to Kenneth, and started shooting at him. Kenneth ran away, and defendant jumped in the car and Dalloz drove them away from the crime scene.

Defendant told Chiampas that Dalloz thanked him, drove to the Hollywood liquor store, and bought him some beer. Then they drove to the middle of his grandmother's block, where he took the shells out of the gun and put them in the sewer. Defendant put the gun in the ash tray of the car, and the police later stopped them.

Defendant's testimony at trial mirrored his court-reported statement to Chiampas except for one crucial difference: at trial, defendant claimed he shot Kenneth because he saw a "chrome object" in Kenneth's hand. Defendant also testified he related that information to Chiampas and Detective Luera prior to the court reporter taking down his statement. However, Chiampas testified that defendant never told her he had seen anything in Kenneth's hand. Detective Luera never testified about whether defendant stated he had seen an object in Kenneth's hands prior to the shooting.

The jury found defendant guilty of first-degree murder, and the trial court sentenced him to 50 years in prison. Defendant filed this timely appeal.

First, defendant argues the trial court erred by refusing to allow Detective Luera to testify that defendant told him and Assistant State's Attorney Chiampas that he had seen "something" in Kenneth's hands prior to the shooting. Defendant contends Detective Luera's testimony was admissible to impeach defendant's court-reported statement, in which he failed to mention seeing an object in Kenneth's hands prior to shooting him. Defendant also contends Detective Luera's testimony was admissible to impeach Chiampas' testimony that defendant never mentioned seeing anything in Kenneth's hand.

We disagree. The trial court permitted defendant to testify he had seen a chrome object in Kenneth's hands prior to the shooting. Thus, Detective Luera's testimony would have been about a prior statement made by defendant, that he had seen "something" in Kenneth's hand, which was consistent with his trial testimony. Proof of such a prior consistent statement generally is inadmissible as hearsay. *People v. Henderson*, 142 Ill. 2d 258, 310 (1990).

■ Defendant argues, though, that the State claimed he had recently fabricated his trial testimony that he had seen a chrome object in Kenneth's hand prior to shooting him. Therefore, the trial court should have allowed his prior consistent statement to Detective Luera. In *People v. Emerson*, 97 Ill. 2d 487, 501 (1983), *People v. Ashford*, 121 Ill. 2d 55, 71 (1988), *People v. Gacho*, 122 Ill. 2d 221, 250 (1988), *People v. Harris*, 123 Ill. 2d 113, 139 (1988), and *People v. Henderson*, 142 Ill. 2d 258, 310 (1990), our supreme court held that when it is charged that the witness recently fabricated his testimony or has a motive to testify falsely, proof that he gave a similar account before the motive existed or before the effect of the account could be foreseen is admissible. Thus, under *Emerson, Ashford, Gacho, Harris*, and *Henderson*, defendant's statement to Detective Luera was admissible only if he made that statement before he had the motive to testify falsely.

However, in *People v. Williams*, 147 Ill. 2d 173, 227 (1991), the supreme court held "prior consistent statements are admissible to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication, and such evidence is admissible to show that he told the same story before the motive came into existence *or before the time of the alleged fabrication.*" (Emphasis added.) In *People v. Antczak*, 251 Ill. App. 3d 709 (1993), the appellate court construed *Williams* to mean that when a witness is charged with recently fabricating his testimony at trial, prior consistent statements are admissible regardless of whether the motive to testify falsely existed at the time the witness made those prior consistent statements. In effect, *Antczak* held that the supreme court in *Williams* overruled its decisions in *Emerson, Ashford, Gacho, Harris*, and *Henderson* that prior consistent statements are admissible to rebut a claim of recent fabrication only if those prior statements were made before the motive to testify falsely arose.

However, a careful examination of *Williams* reveals that, in analyzing the issue as to whether the trial court erred by admitting a witness' prior consistent statement into evidence, the *Williams* court considered whether the witness had the same motive to fabricate at the time she made the prior consistent statement as she did at trial.

Further, in its analysis of the issue, the *Williams* court cited with approval both *Harris* and *Emerson*, as well as two other cases, *People v. Clark*, 52 Ill. 2d 374 (1972), and *People v. Titone*, 115 Ill. 2d 413 (1986), in which the court considered whether the motive for fabrication existed at the time of the witness' prior consistent statements. Finally, we note that subsequent to *Williams*, the supreme court in *People v. Patterson*, 154 Ill. 2d 414, 453 (1992), cited *Emerson* with approval and held that a witness' prior consistent statements were inadmissible because the motive to fabricate existed at the time the statements were made. Therefore, we conclude that *Emerson*, *Ashford*, *Gacho*, *Harris*, and *Henderson* are still good law. Accordingly, defendant's prior consistent statement to Detective Luera was admissible to rebut the charge of recent fabrication only if the motive to fabricate did not exist at the time he made that statement.

■ Defendant made his statement to Detective Luera, that he had shot Kenneth because he saw "something" in Kenneth's hands, *after* being arrested by the police who had also recovered the gun from his car. Thus, defendant had a motive to fabricate when he spoke with Detective Luera, and therefore defendant's statement was not admissible at trial.

■ Defendant makes several more arguments in support of his contention that the trial court erred in refusing to allow Detective Luera's testimony about defendant's statement that he saw something in Kenneth's hands prior to shooting him. First, defendant argues that his court-reported statement, in which he failed to mention seeing anything in Kenneth's hands, was inconsistent with his trial testimony that he had seen a chrome object in Kenneth's hands prior to the shooting. Therefore, the trial court should have allowed in his statement to Detective Luera in order to rehabilitate him. Where a witness has been impeached by means of a prior inconsistent statement, he may bring out all prior statements if they explain or disprove the making of the inconsistent statement. *People v. Williams*, 147 Ill. 2d at 227.

Here, defendant's court-reported statement was admitted not merely for impeachment purposes, but as substantive evidence. Therefore, *Williams* is factually inapposite. Further, even if *Williams* did apply here, defendant's prior statement to Detective Luera is not admissible because it does not explain why his court-reported statement failed to include an account of the object in Kenneth's hands, nor does the statement to Detective Luera disprove the court-reported statement.

■ Second, defendant argues the trial court should have admitted his statement to Detective Luera in order to prevent the jury from

receiving a "misleading impression" about the court-reported statement. We reject this argument. During the court-reported statement, defendant was asked open-ended questions that allowed him to explain fully the circumstances surrounding his shooting of Kenneth. The entire statement was admitted into evidence. The jury was not "misled" in any way.

■ Third, defendant contends a prior consistent statement may be admitted where substantial doubt is raised as to whether the impeaching statement was actually made. See *People v. Rodriguez*, 58 Ill. App. 3d 562, 569 (1978). As discussed above, defendant's court-reported statement was admitted not merely for impeachment, but as substantive evidence. Further, there is no doubt defendant made the court-reported statement. Accordingly, *Rodriguez* does not apply here.

■ Fourth, defendant argues the compulsory process clause of the sixth amendment grants a defendant the right to call witnesses in his favor and, therefore, the trial court erred when it refused to permit the testimony of Detective Luera. In support, defendant cites *Rock v. Arkansas*, 483 U.S. 44, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987). In *Rock*, the United States Supreme Court held that a *per se* rule excluding all hypnotically refreshed testimony impermissibly infringed on a criminal defendant's right to call witnesses in his favor and, thus, violated the compulsory process clause. Clearly, *Rock* is factually inapposite to the present case.

A case more directly on point is *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), which was cited in *Rock v. Arkansas*. In *Chambers*, the Court held the trial court abridged defendant's right to present witnesses in his own defense by excluding hearsay testimony that bore "persuasive assurances of trustworthiness" and was critical to the accused's defense. *Chambers*, 410 U.S. at 302, 35 L. Ed. 2d at 313, 93 S. Ct. at 1049. *Chambers* set forth four factors to help determine the reliability of a hearsay statement: (1) the statement was made spontaneously to a close acquaintance shortly after the occurrence of the crime; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the interests of the declarant; and (4) adequate opportunity existed for cross-examination of the declarant. *Chambers*, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49. See also *People v. Thomas*, 171 Ill. 2d 207, 216 (1996).

■ With regard to the first *Chambers* factor, defendant's statement that he saw something in Kenneth's hand was made to Detective Luera, not a close acquaintance. As for the second factor, defendant's statement was corroborated only by his own testimony,

not by the witness to the crime or his court-reported statement. With respect to the third factor, defendant's statement offered a potential justification for the shooting and, thus, was self-serving, not self-incriminating. Finally, as to the fourth factor, an adequate opportunity existed for cross-examination of defendant regarding the statement.

Under these facts, we cannot say defendant's hearsay statement was so trustworthy that the trial court abused its discretion by denying its admission.

Moreover, even if the trial court did err in refusing to admit defendant's prior consistent statement to Detective Luera, we would not reverse the trial court given the overwhelming evidence against defendant. See our discussion of defendant's reasonable doubt argument, *infra*.

Next, defendant contends the trial court erred when it refused to give an instruction on second-degree murder based on provocation. Defendant was entitled to that instruction if some evidence of serious provocation existed in the record which, if believed by the jury, would reduce the crime to second-degree murder. *People v. Delgado*, 282 Ill. App. 3d 851, 857 (1996).

The second-degree murder statute states in relevant part:

"(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and ***

(1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***[.]

***

(b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." 720 ILCS 5/9—2 (West 1992).

Mutual quarrel or combat is one of the recognized forms of serious provocation sufficient to reduce first-degree murder to second-degree murder. *People v. Garcia*, 165 Ill. 2d 409, 429 (1995). Defendant contends there was evidence presented at trial that a mutual quarrel took place prior to the shooting and, therefore, the trial court should have given the provocation instruction.

We disagree. The trial testimony established only that defendant and Kenneth exchanged heated words prior to the shooting. However, "[w]ords, in and of themselves, no matter how vile, can never constitute serious provocation such that second degree murder should be found instead of first degree murder. [Citation.] Rather, the words *** must be accompanied by mutual combat so serious that it mitigates against finding the defendant guilty of first degree murder." *Garcia*, 165 Ill. 2d at 429-30.

Defendant points to his testimony that he shot Kenneth in self-defense after seeing a chrome object in his hands as evidence of such mutual combat. However, mutual combat does not constitute a fight in which one of the parties acts in self-defense. *Delgado*, 282 Ill. App. 3d at 857-59. Accordingly, the trial court properly refused to give the provocation instruction.

■ Next, defendant argues the trial court erred by denying his request to bar the State from using his court-reported statement based on his contention that it was inadmissible hearsay. We note that defendant does not contend his statement was involuntarily given.

We find no error. "[O]ut-of-court admissions and confessions of a party's opponent in civil and criminal cases are a principal exception to the hearsay rule ***." *People v. Bryant*, 36 Ill. App. 3d 298, 300 (1976).

Defendant argues, though, that the confrontation clause of the sixth amendment bars a hearsay statement unless it bears "adequate indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 608, 100 S. Ct. 2531, 2539 (1980); *Idaho v. Wright*, 497 U.S. 805, 815, 111 L. Ed. 2d 638, 652, 110 S. Ct. 3139, 3146 (1990). Defendant contends his court-reported statement lacks such reliability, mainly because it conflicts with other evidence, and therefore the court should have refused to admit it at trial.

We disagree. The reliability of a hearsay statement can be inferred in a case where the evidence falls within a firmly rooted hearsay exception that rests "upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' " *Ohio v. Roberts*, 448 U.S. at 66, 65 L. Ed. 2d at 608, 100 S. Ct. at 2539, quoting *Mattox v. United States*, 156 U.S. 237, 244, 39 L. Ed. 409, 411, 15 S. Ct. 337, 340 (1895). The hearsay exception for a criminal defendant's voluntary confession is firmly rooted in the law and comports with the substance of the constitutional protection. See *People v. Schwartz*, 3 Ill. 2d 520, 522 (1954) ("It is elementary that extrajudicial confessions *** are competent evidence, as an exception to the hearsay rule, *** when they are voluntarily and understandingly made. Although they are hearsay, they are considered reliable because the law presumes that no rational person would make admissions against his interest unless urged to do so by the promptings of his conscience to tell the truth, which invests them with such a high degree of reliability that they can be taken out of the classification of unreliable hearsay"). Thus, defendant's voluntary confession contained adequate indicia of reliability.

The State contends that a defendant's confession is properly considered nonhearsay, as opposed to an exception to the hearsay rule, and therefore no "indicia of reliability" is even required. In support, the State cites *People v. Aguilar*, 265 Ill. App. 3d 105 (1994). In *Aguilar*, the Appellate Court, Third District, held that a statement is not hearsay if it is a party's own statement offered against that party. *Aguilar*, 265 Ill. App. 3d at 110. In such a case, the defendant's statement is termed an admission, and it may be used against him unless excluded by the privilege against self-incrimination or other exclusionary rules. *Aguilar*, 265 Ill. App. 3d at 110.

In *People v. Cruz*, 162 Ill. 2d 314, 374-75 (1994), though, our supreme court held that "[r]elevant admissions of a party *** are admissible when offered by the opponent as an *exception to the hearsay rule*." (Emphasis added.) See also *Schwartz*, discussed above, which describes an extrajudicial confession as an exception to the hearsay rule. Thus, we think defendant's confession here is better analyzed as an exception to the hearsay rule, as opposed to nonhearsay. However, we note that, under either analysis, defendant's confession was properly admitted into evidence.

■ Next, defendant argues the trial court erred when it sustained objections to the following questions posed to him on direct examination:

"Q. How long have you lived with your grandmother?
* * *
Q. Are you employed now?"

In support, defendant cites Cleary & Graham: "The occupation and related background of the witness are regarded as having value in determining the credit to be given her testimony and may be inquired into as a matter of right ***." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 607.6, at 393 (6th ed. 1994).

However, the quoted language from Cleary & Graham is taken from a section entitled "Components of Credibility: Impeachment." Here, defense counsel's questions were not an attempt to impeach defendant. Moreover, the cases Cleary & Graham cites in support hold only that it is proper to cross-examine a witness regarding his occupation and related background as a matter affecting the witness' general credibility (see *People v. Crane*, 302 Ill. 217 (1922)), even though an unlawful or disreputable occupation is disclosed. See *People v. White*, 251 Ill. 67 (1911); *People v. Bond*, 281 Ill. 490 (1917); *People v. Shinkle*, 160 Ill. App. 3d 1043 (1987), *rev'd*, 128 Ill. 2d 480 (1989); *People v. Kegley*, 227 Ill. App. 3d 48 (1992); *People v. Hines*, 94 Ill. App. 3d 1041 (1981); *People v. Anderson*, 48 Ill. 2d 488 (1971). None of those cases are applicable here, where defendant argues that the trial court improperly restricted direct examination of him.

Defendant contends the restriction of direct examination violated the compulsory process clause of the sixth amendment. We disagree. The compulsory process clause does not allow a defendant to offer irrelevant evidence. *People v. Maberry*, 193 Ill. App. 3d 250, 263 (1990). The questions complained of here were not relevant, and the trial court did not abuse its discretion in sustaining objections to them. Moreover, even if the trial court did err, we do not see how defendant was prejudiced thereby.

■ Next, defendant argues the trial court erred by unduly restricting cross-examination of Assistant State's Attorney Chiampas. The latitude permitted on cross-examination is within the sound discretion of the trial court. On review, we will not reverse the trial court's limitation on cross-examination absent an abuse of discretion resulting in manifest prejudice to the defendant. *People v. Sims*, 265 Ill. App. 3d 352, 358 (1994).

Defendant contends the court erred when it sustained an objection to the following question:

> "Q. You've learned from other assistant State's Attorneys that you should ask questions of a defendant about how he was treated by the police, correct?"

We find no abuse of discretion, because the record indicates Chiampas had previously been asked the same question, and she testified she asks each individual she interviews about how the police treated him. See *People v. Matthews*, 205 Ill. App. 3d 371, 413 (1990) (the trial court has broad discretion to curtail questioning that it finds unnecessarily repetitive).

Defendant also contends the court erred by sustaining objections to the following questions:

> "Q. You've learned how you should ask questions about whether or not a defendant is under the influence of alcohol, correct?
>
> * * *
>
> Q. You've also been told at some point that you should purposely put mistakes in the statements for a defendant to correct?"

We find no abuse of discretion, as defendant previously asked Chiampas whether the State's Attorney's office has policies regarding how to take statements from defendants. Chiampas testified there were no general policies and that her "job as well as any other assistant State's Attorney's job was to take the statement of the defendants down." See *Matthews*, 205 Ill. App. 3d at 413.

Finally, defendant contends the trial court erred in sustaining an objection to the question:

> "Q. Was there a promotion from you or for you to go to the felony review unit to the felony trial division?"

We find no abuse of discretion, as this question was not relevant. See *People v. Khan*, 136 Ill. App. 3d 754, 761 (1985) (the trial court may bar cross-examination seeking irrelevant information).

■ Next, defendant contends the State made improper remarks during closing argument. A prosecutor is allowed a great deal of latitude in closing argument and may comment upon the evidence presented and the reasonable inferences arising therefrom. *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). Even if a prosecutor's closing remarks are improper, they do not constitute reversible error unless they result in substantial prejudice to the defendant such that the verdict would have been different absent those remarks. *Hudson*, 157 Ill. 2d at 441.

Defendant waived review of some of the State's remarks by failing to make objections at trial. *Hudson*, 157 Ill. 2d at 425. We proceed to address only those remarks that defendant objected to in the trial court.

First, defendant complains about the State's comment:

"[T]he facts you heard from the defendant, from Peggy Chiampas [are] that he never told anybody he saw anything out there."

Defendant contends this comment was improper in light of defendant's statement to Detective Luera that he had seen "something" in Kenneth's hands prior to shooting him. As discussed above, though, the trial court properly refused to admit Detective Luera's testimony. Further, the State's comment was a proper statement of the evidence presented at trial, since defendant's court-reported statement contained no mention of any object in Kenneth's hands and Chiampas testified that defendant never mentioned seeing anything in Kenneth's hands prior to shooting him.

Second, defendant complains about the State's comment:

"[T]he defense wants you to believe that a licensed attorney [Chiampas], licensed to practice law in the state of Illinois came up here and didn't tell you the truth."

Defendant is apparently arguing that the State improperly vouched for the credibility of a witness. See *People v. Spiezio*, 191 Ill. App. 3d 1067, 1075-76 (1989). We find no error here, because the State's comment was made in response to defense counsel's closing argument:

"[T]estimony *** contained in [defendant's court-reported statement] is not the whole truth about what went on. Ladies and gentlemen, what was put in there was put in there by the State's Attorney, the assistant State's Attorney who decided what she wanted to put in, plain and simple."

See *People v. Collins*, 106 Ill. 2d 237, 276-77 (1985); *People v. Williams*, 161 Ill. 2d 1, 46 (1994).

Third, defendant complains about the State's comment:

"Miss Chiampas was specifically asked 'did the defendant ever tell you about a chrome object in the victim's hands.' Answer. 'No. It didn't happen like that.' "

Chiampas testified defendant never told her he had seen anything in Kenneth's hands. Thus, the State's comment was not error.

Fourth, defendant complains about the State's comment:

"[I]f the defendant was sitting in that room with a State's Attorney and said in response to any of her questions or blurted out, 'but the victim had a chrome object,' that court reporter would have typed that down."

That comment is an accurate reflection of the evidence, as the court-reported statement was admitted into evidence and it contained no mention of any chrome object.

Next, defendant argues his 50-year sentence is improperly disparate to the 30-year sentence imposed on codefendant Debra Dalloz. Fundamental fairness is not violated simply because one defendant receives a substantially longer sentence than another. *People v. Brown*, 267 Ill. App. 3d 482, 487 (1994). A disparity in sentencing can be justified by differences in the nature and degree of the defendants' participation in the offense or differences in the codefendants' histories, characters, criminal records, potential for rehabilitation or relative maturity. *Brown*, 267 Ill. App. 3d at 487.

Here, Debra Dalloz drove defendant to Kenneth and pointed him out, but only defendant shot Kenneth. Thus, the disparity in sentences is justified by the difference in the degree of the codefendants' participation in the shooting. Further, there was much mitigation evidence presented for Dalloz that was not presented for defendant. In particular, numerous individuals testified to Dalloz's good character as a person and as an employee. Dalloz also informed the trial court that she was sorry about the shooting. By contrast, during defendant's sentencing, he refused to take responsibility for his actions and showed no remorse. Thus, the disparity in sentences is also justified by the differences in the codefendants' characters, potential for rehabilitation, and relative maturity.

*People v. Williams*, 228 Ill. App. 3d 981 (1992), and *People v. Fauntleroy*, 224 Ill. App. 3d 140 (1991), cited by defendant, do not compel a different sentencing result. In *Williams* and *Fauntleroy*, the appellate court affirmed codefendants' equal sentences even though only one of the codefendants actually shot the victim. In each case, the appellate court held that the codefendants' roles in the killings were not so different as to require a different sentence. However, unlike here, in neither *Williams* nor *Fauntleroy* did the appellate court

discuss whether the evidence presented during sentencing established differences in the codefendants' character, potential for rehabilitation, or relative maturity. Thus, neither *Williams* nor *Fauntleroy* is helpful to defendant.

*People v. Clay*, 124 Ill. App. 3d 140 (1984), cited by defendant as a case where the appellate court reduced a defendant's sentence because it was excessively disparate from the sentence imposed on a codefendant, is factually inapposite. Neither of the codefendants in *Clay* fired the weapon that killed the victim, whereas here defendant shot the victim while codefendant Dalloz merely drove defendant to and from the crime scene.

■ Next, defendant argues the trial court abused its discretion by sentencing him to 50 years in prison. Defendant contends the trial court failed to give adequate consideration to his rehabilitative potential, as demonstrated by the fact that it made no specific findings concerning factors in aggravation or mitigation.

We disagree. The trial court need not recite and assign a value to each factor in aggravation and mitigation it has considered. *People v. Nussbaum*, 251 Ill. App. 3d 779, 781 (1993). Further, even though the trial court does not expressly state its consideration of all the mitigating factors, such consideration is presumed where the mitigating factors were argued before the court. *People v. Rodriguez*, 254 Ill. App. 3d 921, 931 (1993).

At the sentencing hearing here, defense counsel presented evidence in mitigation that defendant was neglected as a young child and had been in and out of foster homes. Defense counsel also argued that defendant has children and an employment history, but has "no appreciable criminal history." Defense counsel further argued that codefendant Dalloz had facilitated the shooting, and there was little likelihood defendant would repeat such a crime.

In aggravation, a victim-impact statement authored by the victim's sister, Essie Gray, was admitted in evidence.

After the presentation of the evidence in mitigation and aggravation, defendant addressed the court but expressed no remorse for the killing. The trial court then issued its sentence, stating that codefendant Dalloz "has a great deal of responsibility in this case" but that defendant cannot excuse his conduct simply because Dalloz asked him to kill the victim. The court noted the victim's family "would not be grieving" if defendant had not grabbed a gun, looked for the victim in several different places, and then killed him. The court sentenced defendant to 50 years in prison.

The weight the trial judge is to accord each factor in aggravation and mitigation depends on the circumstances of the case. The bal-

ance to be struck among the aggravating and mitigating factors is a matter of judicial discretion that we will not disturb on appeal absent an abuse thereof. *People v. Dominguez*, 255 Ill. App. 3d 995, 1004 (1994). Defendant's 50-year sentence was within the statutory guidelines for first-degree murder and was not an abuse of discretion.

■ Finally, defendant contends the State failed to prove him guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d at 261.

The evidence against defendant was overwhelming. Essie Gray testified she saw defendant shoot her brother, Kenneth, and that Kenneth had nothing in his hands at the time. The police who arrived on the scene found no weapons on Kenneth or in the vicinity. Further, defendant gave a court-reported statement in which he admitted killing Kenneth. In that statement, defendant never mentioned seeing anything in Kenneth's hands prior to shooting him. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty of first-degree murder.

For the foregoing reasons, we affirm the trial court. As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

CAHILL and THEIS, JJ., concur.